STATE of Missouri, Respondent,

v.

Otis LeRoy SLADE, Arthur Russell Slade and Kenneth Lee Waller, Appellants.

No. 47728.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

Rehearing Denied Oct. 10, 1960.

Earl E. Roberts, Steelville, for appellants.

John M. Dalton, Atty. Gen., James B. Slusher, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendants were found guilty of stealing a motor vehicle as jointly charged in an information filed in the Circuit Court of Phelps County and the punishment of each was assessed at imprisonment in the penitentiary for a term of three years. Their joint motion for a new trial was overruled and they were sentenced in accordance with the verdict of the jury. Among other assignments of error is the contention that the evidence was insufficient to make a submissible case and that a judgment of acquittal should have been directed.

All of the defendants were soldiers in the United States Army stationed at Fort Leonard Wood near Rolla, Missouri. The defendants Otis LeRoy Slade and Arthur Russell Slade are brothers. They together with Kenneth Lee Waller are the defendants in the case. Daniel Mackachinis, also a soldier at Fort Leonard Wood, was involved in the occurrence out of which the prosecution arose but was not a defendant in the case. On the afternoon of March 28, 1959, the three defendants and Mackachinis were together in Rolla. At about 3:00 p. m., while riding around town in a 1954 Ford convertible owned by Otis Slade, they went to a used-car lot operated by Thurlo Burks in Rolla where they looked at a 1954 Ford sedan which was test-driven by one of the boys accompanied by a salesman. They left and during the afternoon and evening spent considerable time at a skating rink. About 9:00 p. m., Arthur Slade, driving Otis' car, took Mackachinis to within about a half-block of the used-car lot and let him out. Mackachinis went onto the lot and got the keys out of the 1954 Ford sedan at which they had looked that afternoon. Sometime after 10:00 p. m., when the used-car lot had been closed for the night, Arthur Slade again drove Mackachinis to within a short distance of the used-car lot. Mackachinis again went onto the lot and, using the key he had taken earlier, drove the Ford sedan from the lot, past the place where Arthur Slade was waiting, to a wooded area on a country road about two miles north of Rolla where he concealed it. Arthur Slade, in Otis' car, accompanied Mackachinis to the hiding place and drove him back to Rolla. The defendants and Mackachinis were together for at least portions of the remainder of the evening at the skating rink and at a night club where they stayed until about 1:00 a. m. The defendants and Mackachinis then went in Otis Slade's car to the wooded area where the stolen automobile had been secreted. Mackachinis siphoned the gasoline out of the tank and put it into the Slade car. The Slade brothers took five tires and wheels from the stolen car and Waller removed the radio. Windshield wipers and rear view mirrors were also taken.

Four of the tires and wheels taken from the stolen car were later put on Otis Slade's car in place of his tires which were discarded. The other wheel and tire was secreted in Waller's automobile which was disabled and standing in the back yard of his girlfriend's home. At about 3:00 p. m. the next day the defendants and Mackachinis were arrested. Mackachinis confessed, implicated the others, and testified on behalf of the state. All three of the defendants took the stand and testified in their own behalf.

The principal dispute in the evidence concerns the extent of defendants' knowl-

edge of the theft and their participation in it. Mackachinis testified that, after obtaining the keys from the Ford sedan, he and Arthur Slade went back to the skating rink where Otis Slade and Waller were told that Mackachinis had obtained the key to the Ford sedan and were shown the key. Waller said that he would have to get tools out of his car so that he could get the radio out of the Ford sedan. Mackachinis testified that he, driving the stolen car, followed Arthur Slade out into the country to hide the car, while Arthur claimed Mackachinis led the way. Arthur and Mackachinis drove back to the skating rink in Otis' car where they picked up Otis and later in the evening picked up Waller at his girlfriend's house. Mackachinis further testified that they needed gasoline for use in Otis Slade's car, that they intended to sell one or two of the tires to get money to buy gasoline and were going to put some of the tires on the Slade car. He testified that all three of the defendants knew what was going to be done with the 1954 Ford sedan.

All of the defendants admitted that they took part in stripping the stolen car of its equipment, but Otis Slade and Waller denied that they had previous knowledge that the car had been stolen. Arthur Slade admitted he knew the car was stolen when he saw Mackachinis driving it just after taking it from the lot at about 10:00 p. m. He saw it did not have any license plates and was the same car they had looked at earlier in the day. Otis Slade drove his codefendants and Mackachinis in his automobile to the place where the stolen car was secreted.

■ The defendants first contend that the court erred in overruling the motion for judgment of acquittal at the conclusion of the state's case and at the conclusion of the entire case. Any error in overruling the motion for judgment of acquittal made at the close of the state's case was waived by the introduction of evidence by the defendants in their own behalf. State v. Archer, Mo., 328 S.W.2d 661, 665[5]; State v. Richardson, Mo., 315 S.W.2d 139, 140[3]; State v. Bledsoe, Mo., 254 S.W.2d 618, 622[6]. Therefore, the sufficiency of the evidence must be determined on the basis of its standing at the conclusion of the entire case.

■ Where there is substantial evidence in proof of a defendant's guilt, the judging of the credibility of the witnesses and the weight and value to be given their testimony is the jury's province. State v. Ruckman, Mo., 222 S.W.2d 74, 75[1]. In determining the sufficiency of the evidence to sustain a conviction, the appellate court considers as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom; and evidence to the contrary is rejected. State v. Reagan, Mo., 328 S.W.2d 26, 29[5]; State v. Woolsey, Mo., 328 S.W.2d 24, 25[4].

The automobile of Thurlo Burks was stolen within the meaning of the applicable criminal statutes, §§ 560.156 and 560.161, subd. 2(2) RSMo Cum.Supp.1957, Laws 1955, p. 507, V.A.M.S. Section 560.156, subd. 1(2) defines the word "steal" as used in the statute as "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property."

■ The defendants' principal contention is that there is no evidence that any of them had any part in the actual taking and driving away of the stolen automobile and that no conspiracy was shown within the provisions of § 556.120 RSMo 1949, V.A.M.S. The defendants were charged with stealing an automobile and not with conspiracy which is a separate and independent offense. See 11 Am.Jur., Conspiracy, § 9, p. 549. A person who aids and abets the commission of a criminal offense is guilty as a principal without a showing of conspiracy. Section 556.170 RSMo 1949,

V.A.M.S.; State v. Reich, 293 Mo. 415, 239 S.W. 835, 837[5]; State v. Porter, Mo., 199 S.W. 158, 160[2].

Nor is it necessary to prove that the defendants personally participated in the actual taking and driving away of the stolen car. All persons who act together with a common intent and purpose in the commission of a crime are equally guilty even though they are not personally present at the commission of the offense. State v. Butler, Mo., 310 S.W.2d 952, 957[7]; State v. Lackmann, Mo., 12 S.W.2d 424, 425[4, 5]; State v. Hayes, Mo., 262 S.W. 1034, 1037[8, 9].

While Mackachinis is the one who performed the physical act of removing the car from the owner's premises and driving it to the hiding place, the evidence, both testimonial and circumstantial, is sufficient to show the guilty participation of the defendants in the common plan and purpose. The court did not err in refusing to direct a verdict of acquittal. State v. Wilson, Mo., 286 S.W.2d 756, 758[5]; State v. O'Brien, Mo., 252 S.W.2d 357, 360[7], certiorari denied 345 U.S. 929, 73 S.Ct. 790, 97 L.Ed. 1359.

The foregoing discussion of the law and the evidence in support of the verdict also disposes of the defendants' contention that there was no evidence to justify the giving of the state's instruction S-4-G, which reads as follows: "The Court further instructs you that, when two or more persons knowingly act together in the commission of an unlawful act or purpose, then whatever either does in furtherance of such unlawful act or purpose is in law the act and deed of each of such persons." Since we have held the evidence to be sufficient to show that the defendants were knowingly acting together with Mackachinis in the theft of the automobile, the trial court did not err in giving the instruction.

The defendants next contend that the court erred in permitting evidence of offenses other than the one with which the appellants were charged. On cross-examination the defendants interrogated Mackachinis as to whether he had testified at a preliminary hearing that the defendants had nothing to do with the theft of an automobile, but the matter was left in a confused situation. Before closing its case, the state recalled Mackachinis who testified the preliminary hearing about which he was interrogated related to the theft of another automobile, a 1953 Ford. There was no charge that the defendants had anything to do with that theft. The only objection made was that the testimony was not proper rebuttal. We could as easily pass on the merits of the point and would prefer to do so, but we are precluded because the error claimed was not called to the attention of the trial court in the defendants' motion for new trial. State v. Kelly, Mo., 258 S.W.2d 611, 612[3, 4]; State v. Wilson, 361 Mo. 78, 233 S.W.2d 686, 689[12].

By a liberal construction, the defendants' next contention is that the trial court erred "in admitting irrelevant and incompetent evidence pertaining to the wife of the appellant, Otis Slade." It was brought out without objection that Otis had rented an apartment at Newburg where he stayed at least part of the time and that he had married a fifteen-year-old girl. The defendants put their character in issue and on cross-examination one of defendants' character witnesses was asked whether he knew "there was a want out for" Otis Slade for taking "that girl up in the east coast somewhere". An objection that this was "highly prejudicial" and imminently unfair" was overruled and the witness denied that he had heard such talk. Later the defendants put on the Circuit Clerk and Recorder of Phelps County to identify the records to prove that Otis Slade had married a girl fifteen years of age. There was testimony from this witness without objection that charges against the Slade brothers growing out of an escapade with this girl were dismissed when Otis married her. The de-

fendants' counsel brought out this latter testimony and therefore is in no position to complain of it. Nor was the court in error in permitting the cross-examination of the character witness.

The general rule is that a defendant's good character or lack of it can be proven only by evidence of general reputation and not by proof of specific acts of conduct either good or bad. Nevertheless, on cross-examination of character witnesses, inquiry as to whether they have heard rumors of specific acts of misconduct which reflect upon the defendant's character is permissible to test their knowledge, the trustworthiness and accuracy of their information, the basis for their judgment, their candor and their credibility. State v. Carson, Mo.App., 239 S.W.2d 532, 536 [5]; State v. Childers, Mo., 268 S.W.2d 858, 860[4]. The assignment of error is denied.

The defendants' final assignment is that the court erred in failing to instruct the jury on all questions of law arising in the case in that it failed "to instruct the jury on the defense of appellants that at the time of the taking of the automobile involved herein, no further transfer was contemplated and the use thereof was discontinued." In this connection the defendants rely upon subsection 3 of § 560.156 which, together with subsection 2, provides as follows: "2. It shall be unlawful for any person to intentionally steal the property of another, either without his consent or by means of deceit. 3. If the property stolen within the meaning of subsection 2 is a chattel and the person charged with stealing the same proves by a preponderance of the evidence that no further transfer was made, and that, at the time of the appropriation he intended merely to use the chattel and promptly to return or discontinue his use of it, he has a defense to a prosecution under subsection 2." The defendants assert that the testimony of Mackachinis shows that "he did not intend to keep the motor vehicle, but merely intended

to use the vehicle and discontinue its use and take certain accessories from the vehicle", and that the record further shows that the use of the car was "discontinued at a point". On this premise they say they have a defense to the prosecution which the court should have instructed on although they made no such request at the trial. Whether the provisions of subsection 3 are a part of the "law of the case" under the circumstances is not presented and we do not decide that question.

The evidence does not tend to prove that the defendants and Mackachinis had any intention of returning to the owner the automobile or the parts which they took from it. On the contrary, the proof is that they used the tires and gasoline and would have sold and transferred the remaining parts and equipment if they had not been apprehended when they were. While they did not undertake to dispose of the automobile as an entirety, the reason obviously was not consideration for the rights of the owner. They could not transfer it as a whole without a certificate of title and an attempt to do so would make detection certain. What the defendants and their associate did tended to destroy the identity and function of the chattel as a motor vehicle. This is what they intended to do when they appropriated the automobile. For an extreme example, see State v. Wilson, supra, 286 S.W.2d 756, where the automobile appropriated was "cut up" and sold for junk, and the conviction of theft of an automobile was affirmed.

The new statute was not intended to render less stringent the law proscribing the theft of motor vehicles. The legislative intent of subsection 3 of § 560.156 is made clearer by reference to the Committee's Explanatory Note in the Final Report of the Senate Criminal Law Revision Committee, Vol. III, Proposal No. 49, p. 3, which is as follows:

"Stealing, as a substitute for larceny, embezzlement, false pretenses, and confidence game is intended to pro-

hibit only conduct which has or may bring about a great risk of loss. E.G. a person may appropriate a neighbor's wheelbarrow to move a small pile of dirt, and intend to return it promptly, and there is little risk of loss to the owner. If the defendant can establish that such was his intention, and that he made no further transfer of the chattel, he is not guilty of stealing. Since it is necessary for the prosecution to establish that the act was intentional or that the deceit was intentional, requiring the defendant to establish his lack of intent to permanently deprive the owner of his goods will not deprive him of the presumption of innocence. If the defendant, however, appropriates his neighbor's money, stocks, or bonds, just intending to use them he creates a great risk of loss to the owner because money generally is used by spending it and stocks and bonds by converting them into cash. Under the present law of Missouri, embezzlement is not made any less a crime even though the embezzler intends at the time to restore the money out of his winnings on the races, etc., or even if he actually restores the money.

"One who temporarily 'borrows' an automobile without consent of the owner, would not be guilty of stealing, but that would not prevent his conviction for illegally driving the car under § 560.175. A special section is desirable for this act because of the prevalence of the unauthorized use of motor vehicles, and because frequently such drivers are reckless, and create a danger to life as well as property.

" 'Promptly' is difficult to define, but should depend on the circumstances of each case, with such factors as the value of the chattel and common usage being considered."

■ The conduct of the defendants in appropriating the automobile brought about "a great risk of loss" and it was so intended by them at the time of the taking. The evidence does not tend to prove a defense within the purview of subsection 3 of § 560.156 and the court did not err in failing to instruct on that theory.

We have considered all of the assignments of error and find them to be without merit. Accordingly the judgment is affirmed.

All concur.