STATE of Missouri, Respondent,

v.

Lawrence Tony JACKSON, Appellant.

No. 47888.

Supreme Court of Missouri, Division No. 1.

Oct. 10, 1960.

Cecil Block, St. Louis, for appellant.

John M. Dalton, Atty. Gen., J. Richard Roberts, Sp. Asst. Atty. Gen., for respondent.

## HOLLINGSWORTH, Judge.

■ By information filed in the Circuit Court of the City of St. Louis defendant was charged with burglary in the second degree. The information also invoked the provisions of the (so-called) Habitual Criminal Act, Section 556.280 RSMo 1949, V.A.M.S.,[1] (prior to its amendment by S.B. 117 in 1959, effective August 29, 1959) by alleging his prior conviction of seven felonies, his imprisonment in accord with the sentences imposed upon him in each case and his lawful discharge therefrom upon compliance with the sentences imposed. Upon trial to a jury in June, 1959, he was found guilty as charged, with the further finding that he had been priorly convicted of a felony. In accordance with the provisions of Sections 560.095 and 556.-280 (prior to the aforesaid amendment of the latter) the jury assessed his punishment at imprisonment in the State Penitentiary for a term of ten years. He has appealed from the judgment rendered, but has filed no brief. We, therefore, review the valid assignments of error set forth in his motion for new trial, as required by S.Ct. Rule 27.-20, and the essential portions of the record, as required by S.Ct. Rule 28.02, Vol. 1, V.A.M.R.

Assignments 2 and 6 challenge the sufficiency of the evidence to support the verdict but fail to allege wherein or in what respect it is insufficient. A brief summary of the evidence will suffice to demonstrate that a submissible case was made. It tended to show: Arky's Meat Market, owned by Rose Arky and operated by her and her sons on and prior to February 13, 1959, is located at 5410 Wells Avenue, in the City of St. Louis. The building in which the market is housed is 28 to 30 feet wide and 45 to 50 feet long.

It is situated on the south side of Wells Avenue and fronts to the north. An alley extending southward from Wells Avenue borders its west side. The building is partitioned into three rooms in line from north to south, with doors in each of the partitions. Meats and dressed poultry are refrigerated and stored in these rooms.

On the afternoon of February 13, the market was closed for business, the doors were locked, the windows barred, and a light was left burning in the front portion of the building. At approximately 11:00 p. m., a police officer, engaged in checking the doors of the business houses in that area, observed that, contrary to a local custom of maintaining a light in business places that are closed for the night, no light was burning in Arky's Meat Market. He thereupon drove his automobile to the front of the building and turned a spotlight attached to his car toward the front window so that it shone through the window. The light revealed the face and figure of defendant, a colored man, standing near the rear of the front room. It shone directly on his face and he, surprised, stared at the officer for a few moments. He wore a light jacket and a dark hat and had an object in his hand. He dropped the object he held in his hand and ran back to the south through a door leading into the room to the rear. The officer got out of his car and started down the alley in pursuit. As he entered the mouth of the alley he saw defendant running away from a door in the building which opened into the alley near the rear of the building. The officer chased defendant through a yard, through a gangway and onto a sidewalk, there caught him and took him to the front of the market. The officer then made an inspection of the building and its contents. He found an outer door which led from the building into the alley "busted open", an inner door on which a padlock had been broken, and a window on the west side of the building from which the frame had been pulled and the bars

1. To which revision all statutory references are made.

securing the same had been removed. The contents of the rooms were in disarray. Eggs, dressed capons and other meats had been removed from coolers and placed in an egg crate. A crowbar was found in a chair in the rear of the front room of the building near the point where defendant had stood when the officer first saw him. These conditions had not existed when the building was closed and locked that afternoon.

■ The evidence above detailed clearly warranted a finding that defendant was guilty of burglary in the second degree, as that offense is defined in § 560.070. The evidence also showed the prior convictions of defendant, his imprisonment in accordance with the sentences imposed upon him in each case, and his lawful discharge from each term of such imprisonment upon compliance therewith, as alleged in the information. Consequently, the assignments as to the insufficiency of the evidence to support the verdict must be denied.

■ Assignment No. 1 asserts error in the refusal of the trial court to declare a mistrial when, during direct examination of the police officer he was asked, " * * * What did you do then?", in response to which question the officer stated, among other things, that defendant had been taken to the police station and "booked", but the witness then volunteered the statement, "And he (defendant) wouldn't admit any guilt or anything, so I removed—", at which point the motion for mistrial was made. The court admonished the jury to disregard and not to consider the statement in arriving at a verdict and denied the motion. The contention is that "the poisonous effect [of the statement] could not have been erased from the mind of the jury" by any admonition given. Of course, the statement volunteered by the officer was improper, but we think its purport was so clearly favorable to defendant as to demonstrate beyond question that it could not have been prejudicial. The contention is overruled.

■ Assignment 3 asserts error in the giving of Instruction No. 2, which, among other things, contained the admonition that: "Before you can find the defendant guilty of Burglary in the Second Degree, you must find from the evidence, beyond a reasonable doubt, that he both broke and entered said store, shop and building, but to constitute such breaking, no particular amount of force is necessary." Defendant says: "This instruction was a misstatement of the Law, as it permitted the Jury to find the defendant guilty of Burglary in the Second Degree, in that from said instruction they acted on the premise that he broke and entered said store; without requiring the Jury to find and believe from the evidence beyond a reasonable doubt that he broke and entered into the premises with the felonious intent to steal therein. The instruction gave the Jury a roving commission contrary to the Law to find the defendant guilty when he broke and entered into the premises, without the required finding of a felonious intent to steal; which instruction is contrary to the statute defining 'burglary.'"

The lack of merit in the assignment will be demonstrated by setting forth the facts hypothesized in the instruction prior to the clause above set forth, to wit: " * * * if, * * *, you find and believe from the evidence, beyond a reasonable doubt, that * * * the defendant did wrongfully, forcibly and burglariously break and enter into the store, shop and building of Rose Arky, doing business as Arky's Meat Market, * * * with the felonious intent then and there to steal therein, and if you further find that in said store, shop and building, divers goods, wares, merchandise or other valuable things or personal property of any kind and of some value, however small, were at the time by the said Arky's Meat Market as aforesaid, kept and deposited; then you will find the defendant guilty of Burglary in the Second Degree, and unless you so find all the facts to be as stated, you will acquit the defendant of Burglary in the Second Degree." When

the instruction is considered in its entirety, it is seen that it is not subject to the complaint leveled against it and that it is in form and substance many times approved by this court. State v. Grant, Mo., 275 S. W.2d 332, 334–335; State v. Ewing, Mo., 298 S.W.2d 439, 443.

Assignment 4 is that the court erred in giving Instruction No. 3. The contention is that it is "a misstatement of the Law, and permitted the Jury to find the defendant guilty of the prior felonies without requiring them to be convinced beyond a reasonable doubt of the guilt of the defendant in the present charge." The instruction deals with the effect of the prior convictions of defendant under § 556.280 (prior to its amendment). The first paragraph recites as follows:

"* * * if it should appear from the evidence beyond a reasonable doubt that the defendant has been formerly convicted of felonies and served sentences therefor, that fact alone will have no bearing upon the charge in this case, Burglary in the Second Degree. He is to be tried for the offense of Burglary in the Second Degree alleged to have been committed on the 13th day of February, 1959, solely and only upon the evidence which has been introduced before you at this trial pertaining to that offense. A former conviction or convictions, if you find such to be the fact, should be considered by the jury only as bearing upon the question of the amount of punishment you are to impose in case you find him guilty under the present charge of Burglary in the Second Degree alleged to have been committed on the 13th day of February, 1959."

The second paragraph recites:

"If you find him guilty of Burglary in the Second Degree alleged to have been committed on February 13, 1959, *under Instruction No. 2*, and further find from the evidence beyond a reasonable doubt, that * * *,"

following which the instruction hypothesizes a finding of the seven convictions pleaded in the information and shown in the evidence; and the instruction closes as follows:

"* * * *and if you further find and believe from the evidence beyond a reasonable doubt*, that after his discharge from said sentence or sentences, he committed the offense of Burglary Second Degree alleged to have been committed on February 13, 1959, then it is your duty to assess the maximum punishment prescribed for Burglary Second Degree as explained in the succeeding instruction." (Emphasis supplied.)

Noting the clauses of Instruction 3 hereinabove set forth and the opening clause of Instruction 2 hereinabove set forth (in which the issue of defendant's guilt of the burglary for which he was on trial was submitted), it is seen that Instruction 3 not only correctly declared the law with reference to prior convictions, but it (as did Instruction 2) expressly conditioned any conviction of defendant upon a finding of his guilt of burglary in the second degree, *beyond a reasonable doubt.*

Assignment No. 5 asserts error in the giving of Instruction 1. The first part of that instruction declares the presumption of defendant's innocence; advises the jury (1) that the presumption continues until overcome by evidence establishing his guilt beyond a reasonable doubt; (2) that the burden of proving his guilt rests upon the State; (3) that if the presumption has been overcome by the evidence beyond a reasonable doubt, it is the duty of the jury to convict; and (4) that if, upon consideration of all the evidence, the jury has a reasonable doubt of his guilt, it should acquit, but that (5) a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching his guilt and not a mere possibility of his innocence. Defendant says that "this instruction conflicts with the Law of this state that presumes the

defendant to be innocent; and this presumption continues until it has been overcome by evidence which establishes the defendant's guilt beyond a reasonable doubt. The Jury could well believe that they have the right to find the defendant guilty, if there is a mere possibility of the defendant's innocence."

Suffice to say that the first part of the instruction has been so often approved as to form and substance as to render it needless to discuss the objections leveled against it. See State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 26; State v. Drake, Mo., 298 S.W.2d 374, 377; Vol. 2, Raymond's Missouri Instructions, § 3729, p. 134.

The last paragraph of the instruction sets forth in classical form the many times approved instruction on credibility of witnesses. State v. Caviness, 326 Mo. 992, 33 S.W.2d 940, 943. Defendant complains, however, that "it does not require the Jury to reject any and all portions of a witness' testimony which may have been falsely given." Defendant is in no position to register such complaint. This for the reason that the instruction as given was correct and he offered no instruction declaring the doctrine of "falsus in uno, falsus in omnibus." State v. Politte, Mo., 249 S.W.2d 366, 370 [13]. And even where the doctrine is properly invoked and the court, in its discretion, instructs upon it, the instruction should go no further than to advise the jury that if it believes a witness willfully has sworn falsely on a material issue, the jury should *consider* that fact in determining the credibility of the rest of his testimony. State v. Abbott, Mo., 245 S.W.2d 876, 881 [11].

The information duly charges defendant with the crime of which he was convicted. He was personally present and represented by counsel throughout all stages of the trial and after-trial proceedings. The verdict is in due form and the punishment is within the limits fixed by law. Allocution was granted and the judgment and sentence imposed is in accord with the verdict and constitutes a valid and binding judgment.

The judgment is affirmed.

All concur.