**STATE of Missouri, Respondent,**

v.

**Richard PAPIN, Appellant.**

**No. 50751.**

Supreme Court of Missouri,

Division No. 2.

Feb. 8, 1965.

Thomas F. Eagleton, Atty. Gen., Gary A. Tatlow, Asst. Atty. Gen., Jefferson City, for respondent.

William C. Maier, St. Louis, for appellant.

FINCH, Judge.

Defendant was charged with burglary in the second degree and stealing, and one prior felony conviction. He was found guilty of burglary in the second degree, but acquitted of stealing. The court found that defendant had been convicted of one prior felony (the essential facts with reference thereto were stipulated) and fixed defendant's punishment at imprisonment in the state penitentiary for a term of five years. A timely motion for new trial was filed and overruled, and defendant was permitted to appeal as a poor person.

■ Defendant was represented by counsel throughout the proceedings in the trial court. Counsel filed a motion for new trial and the notice of appeal to this court, but no brief has been filed with this court on behalf of defendant. We will consider all matters properly raised in defendant's motion for new trial and portions of the transcript of the record set forth in Supreme Court Rules 28.02 and 28.08, V.A.M.R.; State v. Jackson, Mo., 369 S.W.2d 199, 200 [1].

The State's evidence will support the following statement of facts: Eugene Lee, his wife and child left their residence at 1225 Monroe Street, St. Louis, at about 6:30 a. m., on November 19, 1963. The doors and windows of the house, including basement windows, were locked, and a screen which covered a front basement window was intact. Shortly before 1:00 p. m., a 13-year-old school boy, Michael Barylski, walked past the Lee home enroute back to school. He had known the defendant for several months, and observed him sitting on the ground by the front basement window of the Lee house ripping the basement window screen. They spoke to each other, defendant asking Barylski how he was doing in school. Barylski then went on to school, but came back by the Lee residence after school at approximately 3:35 p. m. At that time he observed the screen ripped the rest of the way off, and the basement window was open. The window was 3 to 4 feet wide and about 2 feet high.

He went on home, but returned around 4:30 p. m., and reported to Eugene Lee what he had observed. Lee then called the police before entering the house. When Lee and the police entered the house, they found that the door separating the basement from the rest of the house had been forced open from the basement side. Lee's watch, his wife's watch, a collection of Mercury Head dimes, and money from the little boy's piggy bank had been taken from a dresser drawer in the bedroom. Defendant had done some work around the Lee house previously, and for a time fed a dog belonging to Lee, and was familiar with the Lee house. Defendant was arrested December 17, 1963. None of the items taken from the Lee home on November 19, 1963, were recovered.

Evidence for the defendant consisted of the testimony of defendant himself and his mother, Mrs. Nettie Lockhart. Both of them testified that at about 9:00 a. m., on November 19, 1963, defendant came to his mother's residence at 4616 VonPhul in North St. Louis, and that between that time and around 3:00 p. m., they visited and drank in various taverns which they named. Defendant, according to their testimony, left his mother around 3:00 p. m. In addition, defendant denied seeing Barylski at the Lee house on November 19, and denied tearing off the screen or entering the Lee house on that date.

The first point raised in defendant's motion for new trial is that the court erred in sustaining objections to questions asked of witness Eugene Lee "to determine his motive for his conduct in the prosecution of the case of the State of Missouri vs Defendant, Richard Papin." To consider this question, it will be best to set out verbatim the questions, answers, rulings and objections as shown by the transcript, as follows:

"QUESTIONS BY MR. MAIER:

"Q. Mr. Lee, do you have any personal reason for wanting to see the defendant in this case, Richard Papin, sent to jail?

"A. Any personal reasons?

"Q. Yes.

"A. I don't quite understand what you mean by 'personal'.

"Q. Any reason that is personal that you have for wanting to see the defendant sent to jail?

"MR. RYAN: I would like him to define 'personal', if he will.

"THE WITNESS: I don't quite understand—you mean do I have anything personally against him?

"Q. (By Mr. Maier) Yes.

"A. Not personally—I don't consider it personally, but—well, let's put it this way: If I think you did anything wrong—I mean, to take anything personally from this here —I have nothing against you, I mean—

"Q. (Interrupting) Well, let's put it this way: By personally, I mean any desires about this thing—do you have any desires about this man being sent to jail—

"A. (Interrupting) Are you asking me if I like the man personally?

"Q. No, I am asking this simply: Do you want him to go to jail?

"THE COURT: That is not a question for him to answer. If you make an objection I will sustain the objection, Mr. Ryan. That is for the State of Missouri to determine.

"MR. RYAN: I was going to object to that, your Honor.

"THE COURT: Proceed.

"(Thereupon the following occurred out of the hearing of the jury:

"MR. MAIER: It is proper to inquire into the motives—

"THE COURT: No, he has no right to say he doesn't want to prosecute this man; the State of Missouri is prosecuting this case.

"MR. MAIER: The State of Missouri is prosecuting this man; there is no question about that. I can inquire into any relationship relating to his motivation—

"MR. RYAN: (Interrupting) You are not asking him that.

"THE COURT: You were not asking him that. You are asking him if he wants him to go to jail; that is not in his province, at all. I have sustained the objection. Proceed."

In State v. Pigques, Mo., 310 S.W.2d 942, this court held that the trial court unduly limited defendant in his effort to show animus of the prosecuting witness. The opinion points out that defendant Pigques desired to show that there had been violent arguments between the prosecuting witness and defendant over financial matters, that a suit was pending between the two of them for money, and that there had been an investigation by the Wage and Hour Division in which defendant had made a statement which affected the relationship between the two men. None of these showings were permitted, and this court held this was error. By way of contrast, defendant Papin was permitted considerable latitude in his attempt to show animus on the part of Eugene Lee, the prosecuting witness. Michael Barylski was asked if he knew about arguments or bad blood between Lee and the defendant. Barylski testified that Lee told him that on one occasion he got a little mad at defendant. Eugene Lee himself was asked whether he ever had said he would shoot defendant with a shotgun if he saw him around the house, or that he was looking for defendant with his shotgun. He was also asked whether they had had arguments over money. Defendant himself was permitted to testify that he had had numerous arguments with Lee. Defendant went on to testify that on October 16 or 17, 1963, approximately a month before the offense charged, defendant went to Lee and asked him for a "few bucks" on account of work done, but Lee replied the defendant wasn't

worth that to him, but he would give defendant six beers. Defendant testified that he stated to Lee, "If you don't give me some money, you know my record, I am liable to break into your house." Lee laughed it off, but produced the six beers. Defendant went on to testify that the next day, using a key to the Lee house which had been given to him to enable him to feed a dog for Lee, he entered the Lee house and took two watches and a .22 pistol. The following day defendant was arrested. He had sold one watch and the .22 pistol, but had the other watch in his possession. The one watch which was sold was recovered, and both watches were returned to Lee, who declined to prosecute. All of this was developed by defendant, presumably to show animus on the part of Lee against this defendant.

■ In the light of the latitude allowed defendant in developing the relationship and dealings between defendant and Lee, it is the view of this court that the trial court did not commit error in sustaining the objection of which defendant complains. Actually, in that series of questions, Lee was asked about whether he had anything personal against defendant, and he answered that he did not. He went on to say that if he felt someone had done something wrong, that did not mean that he had anything personal against him. Lee then inquired of defendant's counsel, "Are you asking me if I like the man personally?" and counsel replied, "No, I am asking this, simply: Do you want him to go to jail?" As trial counsel pointed out, this question involved the proposition of whether the man should be prosecuted, which is for the State rather than the prosecuting witness to determine. The trial court has some discretion in limiting the examination on matters showing the interest of the witness. State v. McNew, Mo., 353 S.W. 2d 571, 577 [7]. That discretion was not abused here.

■ The second assignment in the motion for new trial is based on the proposition that the State's evidence failed to show that the inner barrier, a basement window, was breached, and hence defendant's motion for judgment of acquittal at the close of the State's case should have been sustained. This motion for judgment of acquittal was overruled, and defendant then testified in his own behalf, and also used his mother as a witness. It is well established that the introduction of evidence by the defendant waived any error in overruling the motion at the close of the State's case. State v. Anderson, Mo., 375 S.W.2d 116, 121 [15]; State v. Slade, Mo., 338 S.W.2d 802, 805 [1].

■ Defendant's third assignment is that his motion for judgment of acquittal at the close of the whole case should have been sustained for the reason that the evidence failed to show that the inner barrier, the basement window, had been breached. In testing the sufficiency of the evidence on this motion, the facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the State, and evidence and inferences to the contrary are rejected. State v. Watson, Mo., 350 S.W. 2d 763, 766 [1]; State v. Slade, Mo., 338 S.W.2d 802, 805 [3].

■ The case of State v. Pigques, Mo., 310 S.W.2d 942, 945 [6], does hold that where a defendant broke open an outer wooden door with intent to steal chickens in the building, but ran away before he breached the inner wire-mesh door which barred his way to the chickens, no burglary was committed, and the evidence would sustain the submission only of an attempt to commit burglary in the second degree. However, that case is not applicable here. Michael Barylski testified that he saw defendant just before 1:00 p. m., and he was tearing the screen which covered the basement window. When Barylski came back by at about 3:35 p. m., the screen was all pulled off and the basement window was open. Eugene Lee also saw the torn screen and open window, and he testified that the

window had been closed and locked when he left the house that morning. He further testified that all other windows and doors had been locked, and that the basement door leading into the house itself had been forced open from the basement side, and that articles were missing from the house. Defendant was shown to be very familiar with the inside of the Lee house. This evidence was sufficient to show that the inner barrier was breached and that the house was entered via the basement window and by forcing open the door between the basement and the house proper, and therefore the motion properly was overruled.

■■■ The fourth and final assignment in the motion for new trial is that the trial court erred in failing to instruct the jury that they must find that defendant breached not only the outer barrier, the screen, but also the inner barrier, the closed window. An examination of Instruction No. 2 given by the court shows that it hypothesized the facts which the jury were to find in order to convict defendant of burglary in the second degree, and in that instruction the jury was told that it must find that "defendant did wrongfully, forcibly, feloniously, and burglariously break and enter a certain dwelling house." The instruction went on subsequently to tell the jury that before it could convict defendant of burglary in the second degree it "must find from the evidence, beyond a reasonable doubt, that he both broke and entered said dwelling house and building." This instruction contained a requirement of a finding by the jury of all the essential elements of burglary in the second degree as set out by Sec. 560.045, RSMo 1959, V.A.M.S. It did not use the terms outer barrier and inner barrier, but it clearly told the jury that it must find that defendant both broke *and* entered the building. The terms "break" and "enter" are not technical words, but are words of common usage which a jury could understand. A substantially similar instruction was approved by this court in State v. Jackson,

Mo., 338 S.W.2d 848, 851 [5], and in State v. Smith, Mo., 342 S.W.2d 940, 942 [6]. If defendant believed that further explanation of the terms "break" and "enter" were required, he should have requested clarification or submitted an additional instruction thereon. State v. Shriver, Mo., 275 S.W.2d 304, 309, where this court said: "The word 'accident' is not a technical word, but is one in common use and generally understood by everyone. If further explanation of the meaning of the term was considered to be necessary, defendant should have asked for clarification." See also State v. Raines, 339 Mo. 884, 98 S.W. 2d 580, 585 [9]. It would seem to be clear that a jury would understand what was meant when the instruction told them twice that they must find that the defendant had to both "break" and "enter" the dwelling house of Lee before they could convict.

We have examined the record as required by our Rules 28.02 and 28.08, V.A. M.R., and find it sufficient with respect to those matters therein specified.

The judgment is affirmed.

All of the Judges concur.