STATE of Missouri, Respondent,

v.

James Edwin COLTON, Jr., Appellant.

No. KCD 27585.

Missouri Court of Appeals,
Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or
Transfer Denied
Nov. 19, 1975.

Gerald D. McBeth, Ewing, Ewing, Carter, Wight & Woodfill, Nevada, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

SOMERVILLE, Judge.

Defendant, charged with arson of a motor vehicle in violation of Section 560.025, RSMo 1969, was found guilty by a jury as charged and his punishment was fixed by it at two years confinement in the Department of Corrections.

Defendant's premise for appellate relief is threefold: (1) that the trial court erred in admitting into evidence a confession he made to law enforcement personnel "without requiring the state to introduce sufficient evidence of the corpus delicti of the crime of arson"; (2) that the trial court erred in admitting into evidence an extrajudicial oral statement he made to Lonnie Loyd, a private citizen, for the reason that Lonnie Loyd "was acting as a posse comitatus" at the time the statement was given, and was therefore required to give him a "Miranda" warning but failed to do so, and for the further reason that the statement was involuntary; and (3) that the trial court "erred in not granting" his "motion for judgment of acquittal."

The following evidence deemed pertinent and dispositive of all the issues raised by defendant, identified with the various witnesses from whom adduced, is revealed by the record. Lois Stewart was the owner of a 1964 Mercury Comet automobile which she had purchased from her brother on September 8, 1973. Thereafter, on the same day, she "was trying it out" on Highway 71 in Vernon County, Missouri, when it malfunctioned. Faced with this dilemma, she left the car on the "side" of Highway 71 and caught a ride with a passing motorist to her home in Rich Hill. She next saw her car some three or four days later at "Garwood's Wrecker" in Rich Hill. When she saw her car at "Garwood's Wrecker" she observed that the interior of the car was badly burned and the seats, battery, and a spare tire were missing from it. Subsequent to the occasion just mentioned, she saw the defendant, at "Stocker's Cafe in Nevada", remove from the trunk of his car a spare tire which she identified as having been in the trunk of her 1964 Mercury Comet.

Larry Wilson lived about one mile west of Highway 71. On the night of September 8th or 9th, 1973, while driving in a westerly direction from his home, he saw the Stewart Mercury Comet parked by the side of the road he was traveling on with a white 1964 Chevrolet "sitting right in front of it." Two people were standing by the Chevrolet. He could not identify the two people but thought one was a man and one was a woman. After traveling on west some two or three miles, Wilson turned around and came back to where he had observed the parked cars. Upon his return he observed that the Mercury Comet was on fire. He then saw the Chevrolet "come out of there like a scalded rat." Wilson gave chase to the Chevrolet and got close enough to obtain its license number. He reported the license number of the Chevrolet to the Missouri State Highway Patrol. Wilson then returned to the scene and observed that the Mercury Comet's "gas tank was propped open with a beer can stuck in there."

E. J. Newman, a member of the Missouri State Highway Patrol, received a call about 1:00 A.M. on September 8th or 9th, 1973, directing him to check out a burning car. Upon arriving at the scene, he found the Stewart Mercury Comet "still smoldering, smoking". No one was present at the scene when he arrived. Newman stated that the fire had been confined to the interior of the

car. He further testified that around the neck of the gas tank he found a "charcoal-type" material, "like it had been tried to be set on fire, to the mouth of the gas tank. . . . It was just a little piece of paper, there wasn't much of it. . . . It looked like it burned to a certain extent and then it went out." While conducting his investigation, Newman noticed that the front seats and battery were missing from the Mercury Comet, and that there was no spare tire in the trunk. Newman had the car towed away by "Garwood Wrecker". Newman also testified that Larry Wilson gave him the license number of a car which Wilson had chased from the scene and the license number checked out as being the number of a license issued to David Loyd.

Lonnie Loyd, brother of David Loyd and boy friend of Lois Stewart, testified that subsequent to the burning of the Mercury Comet he had occasion to be talking "about a gun" with John Eador, a member of the Nevada police force. During the conversation, Eador indicated to Lonnie that he "heard" Lonnie's brother David had stolen a car, burned it, and had been observed at the scene where the car was burned. According to Lonnie, Eador told him that David Loyd's car was observed at the scene of the crime. Lonnie expressed disbelief that his brother was involved in the crime and went to him and made inquiry. David advised Lonnie that the car observed fleeing the scene belonged to defendant. Lonnie therefore had reason to suspect that defendant had perpetrated the crime and sought him out. Finding the defendant at Harry's Truck Stop in Nevada, Lonnie inquired of him as to what "he thought he was doing burning my girl friend's car". Defendant replied, "I didn't know it was her car." Lonnie then told the defendant "he wanted the stuff back" and thereupon defendant took Lonnie out by Horace Johnson's Wholesale Place where Lonnie discovered the seats, spare tire, and battery that had been removed from the Mercury Comet. Defendant also told Lonnie that he had to "run about 80 mile an hour to outrun Larry Wilson . . .". During cross-examination by defense counsel, Lonnie testified that defendant admitted to him that he had burned Lois Stewart's car.

John Eador, a member of the Nevada police force, testified that on November 16, 1973, he and Deputy Sheriff Leon Dowdy picked defendant up (with his consent) and took him to Police Headquarters where defendant read, and had read to him, a "Miranda" warning. Defendant also signed a "waiver of rights" and acknowledged to the officer that he understood it before signing. Thereafter defendant was interrogated by Eador while Dowdy wrote down the questions and answers. Defendant then read and signed the question and answer statement, which, in turn, was introduced in evidence at the trial by the state. In the question and answer statement defendant admitted that, at his wife's suggestion, he towed the Stewart automobile (by use of his white 1964 Chevrolet to which David Loyd's license plate was attached) a mile and a half west of Highway 71 with the intention of stealing the seats therefrom. He further admitted that he took the seats, battery, and spare tire from the Stewart car and then set fire to the interior and gas tank of the car. He also admitted having been chased from the scene of the arson.

Regarding his first point, defendant claims (1) that the "corpus delicti" had to be proved by the state before the extrajudicial confession made by him to Eador and Dowdy could be used against him, (2) that absent his confession the state failed to prove that the fire which burned the Stewart Mercury Comet car was of incendiary origin (an essential element of the corpus delicti of arson), and (3) therefore the trial court erred in admitting his confession to Eador and Dowdy into the evidence. Defendant's major premise is invalid even if it be assumed, arguendo, that the state failed to prove, apart from defendant's confession, that the fire which burned the Stewart Mercury Comet was of incendiary origin.

It is well established in this state that full proof of the corpus delicti, independent of a confession, is not required. *State v. Skibiski*, 245 Mo. 459, 150 S.W. 1038 (1912); *State v. McQuinn*, 235 S.W.2d 396 (Mo. 1951); and *State v. O'Neal*, 436 S.W.2d 241 (Mo.1968). If the state comes forward with evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with circumstances related in a confession both the circumstances and the. confession may be considered in determining whether the corpus delicti is sufficiently proved. *State v. Skibiski*, supra; *State v. McQuinn*, supra; and *State v. O'Neal*, supra. It is manifest that the corpus delicti of arson was sufficiently proved in the instant case when the independent evidence of corroborating circumstances heretofore related tending to prove the corpus delicti is considered in conjunction with the extrajudicial confession made by defendant to Officers Eador and Dowdy.

The main thrust of defendant's second point is that at the time he admitted his guilt to Lonnie Loyd the latter was acting under a request or summons for assistance from a law enforcement officer (policeman Eador), and thereby occupied the status of a posse comitatus, and as such Lonnie was required to give defendant a "Miranda" warning before eliciting an admission of guilt from him, which Lonnie failed to do. For this reason defendant claims the trial court erred in admitting into evidence the extrajudicial oral confession made by him to Lonnie Loyd.

The circumstances under which a private citizen attains the status of a posse comitatus were discussed in *State v. Goodman*, 449 S.W.2d 656 (Mo.1970). In discussing this common law theory,[1] the court therein, l.c. 661 stated:

"In a proper case the sheriff may summon to his assistance any person to assist him in making an arrest for a felony. A posse comitatus, i. e., those called to attend the sheriff, may be summoned verbally. The mode is immaterial, so long as the object is to require assistance."

The court also pointed out in *Goodman*, l.c. 662, that the "action of a posse comitatus constitutes governmental action".

■ Defendant states in his brief that "when police officer Eador discussed the burning of the car with witness Lonnie Loyd and indicated that he would appreciate Lonnie Loyd's assistance in investigating the crime, Loyd became a posse comitatus." The record, however, does not bear out defendant's implication that Officer Eador "indicated that he would appreciate Lonnie Loyd's assistance in investigating the crime", much less that Officer Eador requested or summoned Lonnie Loyd to assist him in making an arrest for a felony. Suffice it to say, Officer Eador's testimony in this respect was as follows:

"Q. How many times did you talk to Lonnie Loyd before you went out and talked to Jim Colton? A. Talked to him once.

Q. Did you ask him to go talk to whoever he thought was involved to see what he could find out? A. No, sir, I did not."

Since defendant failed to demonstrate that Lonnie occupied the status of a posse comitatus, it becomes patently obvious that his status at the time was that of a private citizen and, as recognized by the Supreme Court of this state in *State v. Kelly*, 439 S.W.2d 487, 489 (Mo.1969), "Miranda is not applicable to statements made to a private witness under circumstances not amounting to custodial interrogation."

■ A companion aspect of defendant's second point is a contention on his part that Lonnie Loyd threatened him with physical violence while discussing the burning of Lois Stewart's car, thus rendering his oral admission of guilt to Lonnie inadmissible

1. Defendant does not contend that Lonnie Loyd had attained the status of a posse comitatus under or by virtue of Sections 532.600, 542.170, 542.200, 544.210, or 546.-620, RSMo 1969.

because made under duress and therefore involuntary. As ascertained from defendant's brief, he bases this claim solely on the following testimony elicited from Lonnie Loyd on cross-examination:

"Q. Did you tell him you were going to do something to him when you went out there that day? A. No, but I gave him that impression."

However, the very next question put to Lonnie Loyd on cross-examination, and his answer thereto, fully explained what he (Lonnie Loyd) had reference to by use of the word "impression":

"Q. What sort of an impression or threat was this? A. I just told him I wanted that stuff back and the car paid for."

Lonnie further testified that defendant "did not act like he was afraid" at the time of their conversation, and, as to their comparable sizes, Lonnie testified that "he's just as big as I am." Moreover, a careful review of the record fails to disclose that Lonnie ever verbally or physically threatened defendant in any manner if he refused to talk. It is also important to note that when defendant orally admitted his guilt to Lonnie, he was not in custody, no law enforcement officials were present, and the conversation from which the admission of guilt arose occurred at a public place. Considering the "totality of the circumstances", after having concluded that Lonnie Loyd was under no legal compulsion to give defendant a "Miranda" warning, this court is unwilling to say that defendant was deprived of a free choice when he orally confessed guilt to Lonnie Loyd or that Lonnie exerted any kind of physical or psychological coercion upon him which so overcame his will as to render his admission of guilt involuntary. For all the reasons heretofore mentioned, the trial court did not err in admitting the testimony of Lonnie Loyd relative to the admission of guilt made by defendant.

Defendant contends in his third and final point that the trial court erred in overruling his motion for judgment of acquittal. Defendant rests this contention, in its entirety, on the following assertion: "Taking the State's evidence as a whole, there is no showing other than Witness Stewart's unsupported testimony as to the ownership of the automobile. No testimony was adduced at trial to connect the defendant with the burnt automobile. No evidence was adduced by the state as to the incendiary nature of the fire. No evidence was adduced by the state excluding natural or accidental causes of the fire."

■ In testing the sufficiency of the evidence in the context of defendant's third point "the facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the State, and evidence and inferences to the contrary are rejected." *State v. Papin*, 386 S.W.2d 355, 359 (Mo.1965). See also: *State v. Watson*, 350 S.W.2d 763, 766 (Mo.1961); and *State v. Slade*, 338 S.W.2d 802, 805 (Mo.1960).

■ As heretofore held, the confession made by defendant to Officers Eador and Dowdy was properly admitted into evidence. Therein defendant admitted that he intentionally set fire to the Stewart automobile. This admission was obviously sufficient "to connect the defendant with the burnt automobile", to demonstrate the "incendiary nature of the fire", and to exclude any "natural or accidental cause of the fire". Defendant's claim that "there is no showing other than witness Stewart's unsupported testimony as to the ownership of the automobile" is reduced to immediate inefficacy by *State v. Wahlers*, 56 S.W.2d 26, 27 (Mo.1932). In *Wahlers*, where the charge was operating a motor vehicle without the owner's permission, the court held the owner's testimony that he owned the car which the accused was charged with driving without permission was sufficient to establish the fact of ownership of the

car. *Wahlers* was followed in *State v. Tate,* 436 S.W.2d 716, 718 (Mo.1969), and *State v. Curry,* 473 S.W.2d 747, 748 (Mo.1971), both involving charges of operating a motor vehicle without the owner's permission, and was also followed in *State v. Wilson,* 286 S.W.2d 756, 758 (Mo.1956), involving "larceny" of a motor vehicle. No valid reason comes to mind why *Wahlers* should not constitute controlling authority with respect to proof of ownership of a motor vehicle in a case involving arson of a motor vehicle.

When the record in the instant case is tested by the principles enunciated in *State v. Papin,* supra, bearing in mind both defendant's contentions and the essential elements of the crime of arson [See *State v. Bunton,* 453 S.W.2d 949, 952 (Mo.1970)], the trial court can not be said to have erred in overruling defendant's motion for judgment of acquittal.

Judgment affirmed.

All concur.