**STATE of Missouri, Plaintiff-Respondent,**

v.

**Thomas G. CHARITY, Defendant-Appellant.**

No. 10823.

Missouri Court of Appeals, Southern District, Division One.

Sept. 13, 1979.

Michael Baker, Springfield, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Chief Judge.

This is an unusual case. In order to convict the defendant of the offense with which he was charged it was incumbent upon the state to prove that another offense—stealing—did *not* occur.

A jury found defendant guilty of "obtaining money by means of a 'confidence game,'" § 561.450 RSMo 1969, and fixed punishment at confinement in the county jail for 90 days and a fine of $1,000. Defendant appeals from the judgment and sentence entered on the verdict.

Defendant makes the valid contention that the evidence was insufficient to support the verdict and that the trial court erred in denying his motion for judgment of acquittal.

Defendant was charged with obtaining $9,800 from his insurer, Allstate Insurance Company, by means of a false and fraudulent representation to the effect that defendant's 23-foot boat, boat trailer and boating accessories, all insured with Allstate, had been taken without his consent in a theft. According to the representation, the theft took place on August 9, 1974, at defendant's rural home.

■ In determining the validity of defendant's contention this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the verdict and reject contrary and contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217 (Mo.1972). All evidence unfavorable to the state must be disregarded and the submissibility of the case will be determined upon the basis of all of the evidence, including those portions of defendant's evidence which favor the state. *State v. Wood*, 553 S.W.2d 333, 334 (Mo.App.1977).

Shirley Ann Thompson and her husband owned a boat storage warehouse near Branson, Missouri. On August 8, 1974, an unidentified man leased boat stall number 8 from Mrs. Thompson. The written lease was for a term of three months beginning

August 9, 1974. Mrs. Thompson gave the key to stall 8 to the lessee.

Mrs. Thompson saw a boat and trailer (identified as those of the defendant) in stall 8 a day or two later. The boat had been placed in the stall during her absence.

On August 9, 1974, defendant reported to law enforcement officers in Greene County that his boat, trailer and accessories had been stolen on that date from the yard of his rural residence.

The boat remained in stall 8 for a period of time but, before the lease expired, it was removed from the boat storage. Examination of the lock to stall 8, after the removal, showed that it had not been "tampered with."

Employees of Allstate testified that the defendant, on August 12, 1974, made a claim under his policy and represented to them that the boat, trailer and accessories had been stolen from his home on August 9. Allstate paid $9,800 on the claim.

Oren Coulter testified that in September 1974 he was a member of a boat theft ring headed by Bob Rantz. In September 1974 Rantz and Coulter met two men from St. Louis, Larry Brown and Carl Collard, at a restaurant. The four men went to the boat storage. Using a key, Rantz opened the door to stall 8 and the men removed defendant's boat, trailer and accessories. Coulter used some lacquer thinner to remove the name, "Sweet Charity," which was on the boat. Brown gave Rantz $1,000 in cash and Brown and Collard took the boat to St. Louis. Rantz paid Coulter $300 or $400 out of the $1,000 Rantz received from Brown.

On November 1, 1974, Coulter and Rantz were at the defendant's house. Coulter testified that a conversation took place between Rantz and the defendant in which defendant asked if the boat "would ever show up" and Rantz said, "no." The defendant asked Rantz if it was "enough money, $700." In the same conversation defendant asked Rantz what Rantz and Coulter had done with the boat and Rantz said, "We sold it for $1,000." Thereupon the defendant said, "Well, you guys are

getting paid on both ends of the deal. You are getting paid to get rid of it and you are selling it."

In March 1976 Charles Whitlow, a Greene County detective, together with two other officers, went to defendant's office and talked with him. Defendant was given the *Miranda* warning. Whitlow told the defendant that the officers were "working on his boat that he had reported stolen. I told him we had found through my investigation the boat had not been taken from him but had been taken with his permission so he could collect the insurance on it. I asked the defendant if it was not true he had the boat hidden or destroyed so he could collect the insurance."

Initially the defendant denied Whitlow's accusations but, as the three officers were preparing to leave the office, defendant asked Whitlow to remain. While the other two officers waited outside, defendant told Whitlow that his accusations were true. Defendant told Whitlow he had paid Rantz to burn or destroy the boat.

In his argument defendant asserts there was no showing by the state that defendant committed the crime "other than his alleged statements related by Coulter and Whitlow." Those statements, defendant argues, should not have been admitted into evidence because "there was no showing of the corpus delicti of the crime."

Instruction 4, the state's verdict-directing instruction upon which the jury returned its verdict of guilty, was based primarily upon MAI 10.04. Instruction 4, in essence, required the following findings:

(a) Defendant, on a specified date and in Greene County, represented to employees of Allstate Insurance Company that the boat, trailer and boating accessories were stolen from his residence at Route 2, Rogersville, Missouri, on August 9, 1974;

(b) Allstate insured the items mentioned in the representation;

(c) Defendant knew the representation was false and, in making it, intended to cheat and defraud Allstate;

(d) Allstate's employees believed the representation and were induced, by their reliance on it, to pay and did pay $9,800 to defendant.

Defendant testified on his own behalf and he admitted, as the state's evidence also showed, the existence of elements (a), (b) and (d). The basic inquiry is whether or not the evidence was sufficient to entitle the jury to make finding (c).

The representation which defendant admittedly made to the Allstate employees was that the boat, trailer and accessories were stolen from his residence and that the theft occurred on August 9, 1974. Under Instruction 4 the state had the burden of proving that the defendant knew the representation was false. Defendant, of course, could not know the representation was false unless it was in fact false.

The evidence is sufficient to show that the boat, trailer and accessories were moved on August 9, 1974, from defendant's residence to the boat storage warehouse. Proof of the falsity of the representation required the state to show that the movement of the articles was *not* a theft.

All of the evidence showed that the defendant was in fact the owner of the items. If the state had adduced proof that their removal from his residence to the boat warehouse was done with defendant's consent, the falsity of the representation would be shown. The flaw in the state's case is that the *only* evidence of the falsity of the representation consists of the statements which defendant made on November 1, 1974, as testified to by Coulter, and the statements which defendant made to Charles Whitlow in March 1976 as testified to by Whitlow.

■ Extrajudicial statements, admissions or confessions, are both inadmissible and insufficient to sustain a conviction unless there is independent proof, direct or circumstantial, of the essential elements of the corpus delicti.[1] "[T]he corpus delicti cannot be presumed and must be proved by legal evidence sufficient to show that the specific crime charged has actually been committed by someone." *State v. Summers,* 362 S.W.2d 537, 542 (Mo.1962).

■ Full proof of the corpus delicti, independent of a confession, is not required.[2] "All that is required is evidence of corroborating circumstances tending to prove the corpus delicti and corresponding with circumstances related in the confession." *State v. Dodson,* 551 S.W.2d 932, 935 (Mo. App.1977).[3] Only slight corroborating facts are sufficient to establish the corpus delicti.[4]

In *City of St. Louis v. Watters,* 289 S.W.2d 444 (Mo.App.1956) the defendant was charged with the violation of a city ordinance which made it an offense "to falsely report a law violation to a police officer of the City of St. Louis." The charge was that the defendant violated the ordinance by falsely reporting to a St. Louis police officer that he had been robbed.

■ The only evidence adduced by the city to show the falsity of the defendant's report was testimony by police officer Marvel. Marvel testified that after a polygraph test had been given, the defendant told Marvel that his prior report of the robbery

1. *State v. Summers,* 362 S.W.2d 537, 542[13] (Mo.1962); *State v. Cooper,* 358 Mo. 269, 214 S.W.2d 19, 20 (1948); *State v. White,* 552 S.W.2d 33, 34 (Mo.App.1977); *Kansas City v. Verstraete,* 481 S.W.2d 615, 617 (Mo.App. 1972).

2. *State v. McQuinn,* 361 Mo. 631, 235 S.W.2d 396, 397[3] (1951); *State v. Arndt,* 143 S.W.2d 286, 287 (Mo.1940); *State v. Skibiski,* 245 Mo. 459, 150 S.W. 1038, 1039[1] (Mo.1912); *State v. Robinson,* 555 S.W.2d 667, 669[5] (Mo.App. 1977); *State v. Colton,* 529 S.W.2d 919, 922 (Mo.App.1975).

3. To similar effect see *State v. McQuinn,* 361 Mo. 631, 235 S.W.2d 396, 397[4] (1951); *State v. Skibiski,* 245 Mo. 459, 150 S.W. 1038, 1039[1] (Mo.1912); *State v. Robinson,* 555 S.W.2d 667, 669 (Mo.App.1977); *State v. Colton,* 529 S.W.2d 919, 922 (Mo.App.1975).

4. *State v. McQuinn,* 361 Mo. 631, 235 S.W.2d 396, 397[3] (1951); *State v. Arndt,* 143 S.W.2d 286, 287 (Mo.1940); *State v. Robinson,* 555 S.W.2d 667, 669 (Mo.App.1977).

was false and that the defendant had paid various bills with the money which he had previously reported as taken from him in the robbery.

In reversing the conviction the court stated at p. 446:

"The substance of the offense here is that a robbery was reported when none in fact had taken place. The gravamen of the offense is the falsity of the report. This is the corpus delicti. It is established law in Missouri that when the corpus delicti has not been sufficiently proven, an uncorroborated extrajudicial confession of guilt cannot be regarded as evidence tending to show guilt.

.　　.　　.　　.　　.

"In applying this to the facts before us, we find nothing here beyond the bare confession of the defendant which tends to prove that a robbery was falsely reported. Neither is there a single circumstance related in the brief testimony of the police officers which corroborates the confession, such as proof that he spent the money of which he said that he had been robbed.

"There appears to be no Missouri case touching upon this question, where the crime charged involved a false statement, but there are some Federal cases relating to persons charged with falsely representing themselves to be citizens of the United States. *Gulotta v. United States*, 8 Cir., 113 F.2d 683; *Fotie v. United States*, 8 Cir., 137 F.2d 831; and *Warszower v. United States*, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876. All of these cases give recognition to the rule that a confession of the falsity wholly uncorroborated is not sufficient to sustain a conviction."

In prosecutions for obtaining money under false pretenses (or similar offenses where the making of a false representation is an element) the following authorities hold that a conviction will not be upheld where the *only* evidence of the falsity of the representation consists of statements (whether confessions, admissions or something less)

attributed to the defendant in which he acknowledges the falsity of the representation. *Button v. State*, 207 Miss. 582, 42 So.2d 773 (1949); *Owen v. State*, 159 Miss. 588, 132 So. 753 (1931); *Gulotta v. United States*, 113 F.2d 683 (8th Cir. 1940); *Johnson v. State*, 142 Ala. 1, 37 So. 937 (1904); *People v. Simonsen*, 107 Cal. 345, 40 P. 440 (1895); *People v. Ward*, 145 Cal. 736, 79 P. 448 (1905); *State v. Penny*, 70 Iowa 190, 30 N.W. 561 (1886).[5]

The state argues that the non-occurrence of the theft, as acknowledged by the defendant in his statements to Whitlow and as reasonably inferred from defendant's statements in the presence of Coulter, is corroborated by the following facts: (1) Someone executed the boat storage lease on August 8, 1974, for a period of three months; (2) A boat was put in the storage stall within a day or two after the execution of the lease; (3) In September 1974 Coulter and Rantz went to the boat storage; (4) The boat was that of the defendant; (5) The lock to the boat stall was not tampered with and it is a reasonable inference that the key given to the unidentified lessee was used by Rantz when he removed the boat from the stall.

The state's position is unsound for the reason that each of the foregoing facts is as consistent with the occurrence of larceny as it is with the non-occurrence of larceny. They supply no corroboration for the statements attributed to the defendant acknowledging that no theft was committed.

■ Defendant's statements to Whitlow do not supply the necessary corroboration to defendant's statements made in the presence of Coulter. An extrajudicial confession or admission cannot be used to corroborate another extrajudicial confession or admission. See *United States v. Stabler*, 490 F.2d 345, 350[6] (8th Cir. 1974) and authorities there cited.

The judgment must be reversed and the defendant discharged.

It is so ordered.

All concur, except GREENE, J., recused.

5. The rule has been criticized. See *State v. Urie*, 92 Idaho 71, 437 P.2d 24 (1968)—concurring opinion of Justice McFadden beginning on page 28 of 437 P.2d.