CASE 90—INDICTMENT v. J. H. PARKER AS ACCESSORY BEFORE THE FACT IN THE OFFENSE OF UTTERING A FORGED CHECK AND MOTION SUSTAINED TO TRANSFER THE CASE FROM JEFFERSON COUNTY TO KENTON COUNTY FROM WHICH THE COMMONWEALTH APPEALS— JUNE 8.

## Commonwealth v. Parker.

APPEAL FROM JEFFERSON CIRCUIT COURT, CRIMINAL DIVISION.

OPINION CERTIFIED TO CIRCUIT COURT.

CRIMINAL LAW—CORROBORATION OF ACCOMPLICE—VENUE OF PROSECUTION.

Held: 1. F. testified that he and accused, who was indicted as accessory before the fact in the commission of the offense of ut-

tering a forged check for $5,000, while together at the L. race track, devised a scheme by which F. was to forge and utter the check, and to notify accused by telegram addressed to him under the name of "J. A. Gray," in case he was successful in obtaining the money; that accused was to arrange to prove an alibi for F. if he should be arrested; that F. did effect the purpose of the scheme, and sent the telegram as agreed; that with the money in a satchel he proceeded to M., where he met accused, and that they went together to C., where accused rented a room in a boarding house, and that accused there took the money out of the satchel, and, leaving the satchel in the room, they went to a hotel, where accused gave F. a small part of the money, and retained the rest. It was shown by other evidence that accused and F. were together at the L. race track on the day named, and that on the day the money was obtained a telegram was sent by F. directed to "J. A. Gray;" that they went together to the boarding house named; that the satchel was found in the room; that when arrested accused said he had no money, except a few dollars on his person; specifically denied having any at the hotel, though a package was found in charge of the hotel clerk, placed there by accused, containing about $2,200; that the accused afterwards stated he had won this upon horse races, but could not state how or when; that, when asked by his father what he had done with the rest of the money, he at first denied having taken any, but finally said he had thrown it in the river; that when F. was arrested accused told him he could prove an alibi for him. Held, that there was sufficient corroboration of the accomplice to authorize the submission of the case to the jury.

2. Under Code Cr. Prac., section 21, providing that "if an offense be committed partly in one and partly in another county, or if acts and their effects constituting an offense occur in different counties, the jurisdiction is in either county," accused was properly indicted in J. county as accessory before the fact to the offense of uttering a forged check where the check was forged and uttered in that county, though the accessorial acts of accused in devising the scheme, furnishing the money for the trip, and arranging for the division of the money to be obtained were committed in another county.

KOHN, BAIRD & SPINDLE AND R. J. BRECKINRIDGE, ATTORNEY GENERAL, FOR APPELLANT.

1. We ask the court to decide that it was improper to grant a peremptory instruction, as there was sufficient evidence of the guilt of Parker to authorize his conviction by the jury.

2. The lower court erred in holding that it had no jurisdiction, and in transferring the case to the Kenton Circuit Court where the accessorial acts charged, were committed by. Parker, because, first this rule of the common law has been changed by statute in this State, and it has been discarded by the best writers and jurists. Tully v. Com., 13 Bush, 142, 154; Criminal Code, sec. 21; Bishops' Criminal Law, vol. 1, sec. 111-675; also sec. 53; State v. Grady, 34 Conn., 118; Noyes v. State, 12 Vroom, 418; Com. v. Pettus, 114 Mass., 304.

OPINION OF THE COURT BY JUDGE DuRELLE.

Appellee, Parker, was indicted as accessory before the fact in the commission of the offense of uttering a forged check for $5,000, purporting to be drawn upon the Citizens' National Bank in favor of the German Insurance Bank or bearer, and to be signed by William Edmonds, cashier. It appears that the cashier of the German Insurance Bank was called up by telephone by Friedenheimer, who professed to be Mr. Edmonds, the cashier of the Citizens National Bank, and asked if that bank could be accommodated with currency for a check for $5,000. Being answered in the affirmative, he said he would send for it in a few moments. Soon after the check, which was a forgery, was presented by Friedenheimer and paid. Friedenheimer was sworn as a witness against Parker; testified that he and Parker were at the Latonia race track without money, and trying to devise a scheme to get hold of some; that Parker suggested the scheme to get the money from the German Insurance Bank, and it was there agreed, by the advice and procurement of Parker, that Friedenheimer should go to Louisville,— Parker furnishing the money,—was to forge and utter the check, and to notify Parker by telegram addressed to him under the name of "J. A. Gray" in case he was successful in obtaining the money; that he did effect the pur-

pose of the scheme, obtained the money, and sent a tel-
egram to J. A. Gray, Latonia race track, Ky., saying,
"Everything all right. Cora;" that he proceeded to Mill-
dale, met Parker, then having the money in a satchel;
that they went to Cincinnati together, to a boarding house,
where Parker rented a room; that Parker there took the
money out of the satchel, left the satchel in the room,
and went to the hotel, where a small part of the money
was given to Friedenheimer, and the rest retained by
Parker. The Jefferson Circuit Court, after hearing the
evidence showing the utterance of the forged check by
Friedenheimer, the evidence of Friedenheimer, and evi-
dence which was introduced as tending to corroborate his
testimony, overruled a motion for a peremptory instruc-
tion, but sustained a motion to trasfer the case to the
Kenton Circuit Court, upon the ground that the Jeffer-
son Circuit Court had not jurisdiction of the case.

We think the ruling of the circuit court upon the mo-
tion for peremptory instruction was clearly right. In
corroboration of Friedenheimer's evidence, it was shown,
that he and Parker were together at Latonia on June 3,
1899, the day on which he said the scheme was devised;
that a telegram was sent by him, directed to "J. A. Gray,"
on the day upon which the fraud was committed; that,
when Friedenheimer was arrested in Cincinnati, Parker
told him not to be uneasy, that he could prove an alibi
for him, or words to that effect,—Friedenheimer having
testified that it was agreed between them that Parker
should arrange to prove an alibi in case he was arrested.
It was shown that they went together to the boarding
house; that the satchel was found in the room where
Friedenheimer stated it was left; that receipted bills for
diamond rings were found in Parker's possession, in ac-

Commonwealth v. Parker.

cordance with Friedenheimer's story; that, when arrested, Parker said he had no money, except a few dollars upon his person; specifically denied having any at the hotel, though a package was found in charge of the hotel clerk, placed there by Parker, containing about $2,200; that Parker afterwards stated that he had won this upon horse races, but was unable to state what horse, or how, or when it was won; and, finally, that when asked by his father what he had done with the rest of the money, he at first denied having taken any, but ultimately said he had wrapped it up, attached a stone to it, and thrown it in the river. Some of these circumstances seem trifling as corroboration, but the finding of the $2,200, and Parker's own statements in regard to it, and in regard to what he had done with the remainder of the money, furnish, in our judgment, with the other circumstances independently proven, ample corroboration to go to the jury upon the question of his guilt or innocence. Under the authority of Tully v. Com., 13 Bush., 143, the Jefferson Circuit Court decided that it had no jurisdiction, upon the ground that, though the principal crime of uttering the forged check and obtaining the money thereon was committed in Jefferson county, the accessorial acts were committed in Kenton county, and therefore the accessory must be indicted in the latter county. Upon this question this court is asked to review the decision of the circuit court.

Whatever may have been the common-law rule in this behalf, it seems to us that the Code provision settles the question. Section 21, Code Cr. Prac., provides: "If an offense be committed partly in one and partly in another county, or if acts and their effects constituting an offense occur in different counties, the jurisdiction is in either county." If the testimony of Friedenheimer is to be be-

lieved, the acts of Parker as accessory before the fact, in devising and advising the preparation and utterance of the forged check, in arranging for a division of the money, in furnishing money for the trip, in agreeing to furnish evidence to prove an alibi, and agreeing to provide a room in which they were to meet after the money was obtained, were acts which, though done in Kenton county, produced effects in Jefferson county, and the acts and the effects together constituted the crime whereof appellee was charged. We see nothing in Tully v. Com. opposed to this view. That case arose under a section of the old Code identical with section 21 of the present Code. It came up upon an indictment charging Tully with being accessory after the fact to the offense of murder committed in Scott county, by furnishing money for the purpose of enabling the principal offender to make good his escape from custody and from answering the charge. This court there, in an opinion by Chief Justice Lindsay, held that the Code provision above cited did not apply, because none of the accessorial acts that were committed in Logan county had any effect in Scott county, where the indictment was found. Said the court: "But, taking the strongest phase of the testimony against Tully, we are of opinion that there is no ground for holding that any part of the offense, or any act, or the effect thereof, requisite to its consummation, occurred in Scott county." Discussing the common-law rule, Mr. Bishop says: "Yet, without questioning the doubtful doctrine of the accessory being indictable only in the county in which he entices the principal, as applied to offenses wholly in our own country or State, there is ground for another view, which seems more just, namely, that since we can not take notice of any jurisdiction of the foreign government over the procurer, or

Commonwealth v. Parker.

recognize his liability to answer in the place of the procurement, we must regard him as we do one who, in our own country, performs an act of crime through an innocent agent,—that is, punish him as principal,—the same reason, of necessity, existing in the one instance as in the other." 1 Bish. New Cr. Law, section 111. See, also, State v. Grady, 34 Conn. 118; Com. v. Pettes, 114 Mass., 307; Noyes v. State, 41 N. J. Law, 418.

The question presented here does not involve the question of the power of one sovereignty to punish a crime, such as murder, when the death resulted in that sovereignty, but the blow which produced it was struck in another. Each of the counties involved is equally within the jurisdiction of the sovereignty which enacted section 21 of the Code. We do not desire to go further than is necessary to decide the question here presented, i. e. that an accessory before the fact, who devises in one county a scheme to commit a crime in another thereafter actually committed. or who in one county procures the commission of a crime in another, is, under section 21 of the Code, properly triable in either county. In response to the petition for re-hearing in Jackson v. Com., 100 Ky., 270, (38 S. W., 422, 1091), this court decided that where a crime was attempted in a foreign sovereignty, and was supposed to be there completed, but was in fact completed by an act performed in this State, the criminal might be tried and punished here. The doctrine laid down in that case goes beyond anything required for the decision of this. For the reasons given, this opinion is ordered to be certified to the circuit court.