## Commonwealth v. Apkins.

(Decided May 7, 1912.)

## Appeal from Jessamine Circuit Court.

1. Murder—Jurisdiction—Offense Committed in Ohio, but Death Resulted in Kentucky.—In a prosecution for murder where the evidence showed the poison was administered in Ohio, but that death resulted in Kentucky, the trial judge correctly held that he did not have jurisdiction and properly sustained a demurrer to the indictment.

2. As the wrong was done in Ohio, it was a completed transaction so far as the defendant was concerned, and according to the well recognized rule that the crime is committed at the place where the act is done which results in the injury or death, the prosecution must be conducted at the place where the act is done, and not where the death occurred.

JAMES GARNETT, Attorney General, B. A. CRUTCHER for appellant.

ALPHA HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Peter Paul Apkins was indicted by the grand jury of Jessamine County for the wilful murder of Lizzie Young Apkins, by administering poison to her and also by striking her. While the indictment charged that the offense was committed in Jessamine County, it was conceded by the Commonwealth that the evidence would show that the blows were struck and the poison administered in Cincinnati, Ohio; and, therefore, the case was submitted on an agreed state of facts to the court, with a view of determining whether or not the Jessamine Circuit Court had jurisdiction. Upon consideration the court entered the following order:

"It is admitted by the attorney for the Commonwealth that the blows inflicted and poison administered that caused the death of Lizzie Young Apkins were inflicted and administered to the said Lizzie Young Apkins in the city of Cincinnati, in the State of Ohio, but the death resulted from the same in the State of Kentucky within a year and a day thereafter. In view of said admission by the attorney for the Commonwealth it is the opinion of the court that this court does not have jurisdiction and for that reason the demurrer is sus-

tained, to which the Commonwealth excepts and prays an appeal to the Court of Appeals, which is granted.''

The Commonwealth admits that if the agency or means used, to-wit, the poison which appellee is alleged to have employed to do death, did all of its active work while the deceased remained in the State of Ohio, the offense would, in legal contemplation, have been committed in that State and that the courts of this Commonwealth would have no jurisdiction. It is further admitted that it is not enough to confer jurisdiction upon the courts of this Commonwealth that death, resulting from an unlawful act, occurs in this State. But it is insisted that where one puts into operation a force in another State, having in view an unlawful purpose, and that such force does not manifest itself upon the person affected until such person has come within the jurisdiction of this State, but that it does thereafter manifest itself in this State by producing death to the one affected thereby, then the party setting said force in operation has committed a crime in contemplation of law within this Commonwealth.

Applying this principle to the facts in the case at bar, it is the contention of the Commonwealth that, although appellee administered the poison in Cincinnati, in the State of Ohio, inasmuch as it did not take effect and produce death until after the victim came to Kentucky, in legal contemplation the poisoning was in effect, if not in fact, done in this State, and the courts of this Commonwealth have jurisdiction.

It is admitted that no authority directly in point has been found in support of this theory. But it is urged that the case of Jackson v. Commonwealth, 100 Ky., 269, which was cited with approval in Commonwealth v. Barker, 108 Ky., 679, illustrates and supports this position. In that case two young men administered cocaine to Pearl Bryan in Cincinnati, Ohio, and, believing her to be dead, brought her over into Kentucky to a point back of Newport, and there severed her head from her body. It developed that she was not dead, so, of course, death was not due to the cocaine administered to her, although that of itself might later have caused death. But the immediate cause of death in her case was the severing of her head from her body. Hence the crime for which the defendants in that case were tried was the murder of this unfortunate girl in Kentucky, and not for the taking of her life by administering cocaine in Ohio.

Reliance is also had upon the case of Commonwealth v. Van Tuly, 58 Ky. (1 Met.), 1. Van Tuly was indicted for obtaining money by false pretense. It developed upon the trial that, while in the State of Ohio with a negro whom he represented to be a runaway slave belonging to him, he sold the negro to one Jenkins for $500, which was to be paid when they arrived in Kentucky. After arriving in Kentucky Jenkins paid the $500 and took a receipt, in which Van Tuly covenanted that he was the lawful owner of the negro, who was a slave for life. It developed that the negro was not a slave, but free. The lower court instructed the jury that if the negro was sold and delivered to Jenkins in the State of Ohio, the defendant could not be convicted in this State. In reversing this ruling upon appeal here, the court said:

"The false pretense employed is only the means by which the offense was perpetrated. * * * The crime is not committed until the money is obtained. The fraud in this case was concocted in the State of Ohio, and the representations were there made which were designed to render it successful; but it became mature and took effect in this State; for here the scheme was consummated, the sale evidenced by writing, and the money obtained from the person defrauded. The crime was, therefore, committed in this State, and not elsewhere, and the defendant was properly indicted therefor in the county of Carroll, where the money was paid to him."

The gravamen of the offense in that case was obtaining money by false pretense. The transaction was had in Kentucky, although the scheme for carrying it out, as said by the court, was laid in Ohio.

In Commonwealth v. Ball, &c., 126 Ky., 542, this court had under consideration a question involving facts just the reverse of those here presented. In that case Ball and others were indicted by the grand jury of Bell County for killing Meade Cottrell. It was shown that the shooting occurred in this State, but that, after Cottrell was shot and wounded, he was put upon an engine and carried across the State line into Tennessee, where he died. It was insisted for the defendants that the Kentucky court was without jurisdiction, and the lower court adopted this view. The Commonwealth appealed, and, upon consideration here, it was held that the lower court erred in instructing the jury to find for the defendants. The court, in reaching this conclusion, cited

with approval the following excerpt from Roberson on Criminal Law, section 214:

"At common law, the State in which the mortal wound was given has jurisdiction in cases of homicide, so that, if a mortal wound be given in this State, and death ensues in another, the courts of this State have jurisdiction to try the offender; the going of the injured party into another State being his own voluntary act, and not the act of the defendant."

The court also quoted from Bishop on Criminal Law, section 113, as follows:

"The reader perceives that, according to these cases, the crime in felonious homicide consists in inflicting the blow, while the act of dying, which is performed by the injured person, does not constitute any part of it, or at least such a part as to lay the foundation for a jurisdiction over the offense. This accords with what was before held in England, that a homicide is committed in a county if the blow is inflicted in it, though the death takes place elsewhere."

The opinion then concludes by stating that these citations from Roberson and Bishop are "correct statements of the law." They are, in fact, but declaratory of the common law, which declared that the offender had to be tried in the county where the crime was committed, and that the crime was committed where the blow was struck.

In Rex v. Hargrave, 5 C. & P., 170, decided in 1831, one Richard Dodd was indicted for the crime of manslaughter in the county of Kent. The indictment charged that he assaulted and beat one James Cox in the county of Middlesex, and that Cox afterwards languished and died in the county of Kent. The court, in holding that the accused must be tried in the county of Middlesex, where the blows were struck, said:

"The giving of the blow which caused the death constitutes the felony. The languishing alone, which is not part of the offense, is laid in Kent. The indictment states that the prisoners were then and there present, each abetting in the commission of said felony. We must, of course, comply with the parish rule where the blows, which constitute the felony, were given."

In Alabama there is a statute, giving the State jurisdiction in felony cases, although the injured party may die in another State. In Green v. State, 66 Ala., 40, one Green was indicted for murder. The question of juris-

diction was raised and the court, in disposing of the matter, said:

"We need not rest the decision of this question however on this particular construction of the statute. Our view is that the crime of murder consists in the infliction of a fatal wound, coupled with the requisite contemporaneous intent or design, which legally renders it felonious. The subsequent death of the injured party is a result or sequence, rather than a constituent, elemental part of the crime. This principle is correct, we think, so far as affects the question of jurisdiction."

In Tennessee there is a statute requiring all criminal cases to be tried in the county in which the offense may have been committed, and the Supreme Court of that State, in Reiley v. State, 9 Humph., 646, held that the offense was committed at the place where the blow was struck, though the death may have occurred elsewhere, the court saying:

"That (the blow) alone is the act of the party. He commits this act, and the death is only a consequence. Therefore when the Legislature enacts that the party shall be tried in the county where the offense may have been committed, they intended where the active agency of the perpetrator was employed."

In People v. Gill, 6 Cal., 637, the court held that the crime of murder is committed at the time when the fatal blow is struck.

In Stout v. State, 76 Md., 317, the accused was being tried for murder committed by poisoning. The poison was administered in Maryland and the victim died in Pennsylvania. The question of jurisdiction was raised, and the court said:

"In such case it is the law of Maryland that was violated, and not the law of the State where the death may happen to occur. By the felonious act of the accused, not only is there a great personal wrong inflicted upon the party assaulted or mortally wounded while under the protection of the law of the State, but the peace and dignity of the State where the act is perpetrated is outraged; and, though the death may not immediately follow it, yet, if it does follow as the consequence of the felonious act within the year, the crime of murder is complete. In inflicting the mortal wound then and there the accused expends his active agency in producing the crime, no matter where the injured party may languish, or where he may die, if the death ensues within the time

and as a consequence of the poison given. The grade and characteristics of the crime are determined immediately that death ensues, and that result relates back to the original felonious wounding or poisoning. The giving of the blow that caused the death constitutes the crime.''

In State v. Gessert, 21 Minn., 369, the accused was indicted for the murder of one Savazyo. The evidence showed that the wound which produced death was given in Minnesota, but the death occurred in Wisconsin. The court held that the death in Wisconsin was only a consequence of the act committed against the law of Minnesota, and the courts of Minnesota had jurisdiction to try the case.

In State v. Kelley, 76 Me., 331, the same rule is announced.

In United States v. Charles Giteau, 47 Am. Rep., 247, it was held that the Supreme Court of the District of Columbia had jurisdiction to try the accused, charged with the murder of James A. Garfield, although the latter died in New Jersey. The shot was fired in Washington; the death occurred in New Jersey. The Supreme Court, in an elaborate opinion, held that the crime was committed where the shooting was done.

Thus, it appears that, not only at the common law, but in States where the question of jurisdiction is regulated by statute, courts have with a degree of uniformity held that the crime is committed at the place where the act is done which results in the injury or death, and that the prosecution for such act is properly conducted att the place where the act is done, and not where the death may occur. Here it is conceded that the assault was made and the poison administered in the city of Cincinnati, State of Ohio. At that time both the victim and the wrongdoer were in the State of Ohio. The wrong was done there. It was a completed transaction so far as the appellee was concerned—as much so as though he had shot her, or otherwise inflicted upon her person a mortal wound, and, according to the well recognized rule, the courts of that State alone have jurisdiction to punish the offense. The trial court correctly so held.

Judgment affirmed.