**STATE of Missouri, Respondent,**

v.

**Henry ROLLIE, Appellant.**

No. 29515.

Missouri Court of Appeals,
Western District.

June 11, 1979.

Application to Transfer Denied
Sept. 11, 1979.

**80**

Henry M. Rollie, pro se.

Donald O. Tripp, Liberty, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

Direct appeal from jury conviction for murder in the first degree. Jury affixed punishment at life imprisonment. Motion for new trial timely filed and overruled. Affirmed.

This court is presented with fifteen points upon which to rule. Seven of these points come by way of appellant's brief filed by court appointed counsel. Eight of these points come by way of appellant's pro se brief.

Recitation of pertinent facts is a necessity created by the admixture of points raised.

The Grand Jury of Clay County, Missouri indicted appellant on charges of attempted robbery and felony murder on March 17, 1976. Attorney Brian Hall was appointed to defend appellant.

On April 22, 1976, appellant filed his motion for change of venue and after a hearing upon the motion, the cause was transferred to Clinton County. Attorney Hall was granted leave to withdraw as counsel, and attorney Joe Scott was appointed his successor. On November 10, 1976, appellant was reindicted in Clay County for first degree murder pursuant to § 559.007, RSMo Supp.1975. Attorney Hall was reappointed defense counsel, but at appellant's request, was relieved and the court appointed P. Wayne Kuhlman as defense counsel.

On December 19, 1976, appellant filed his request to represent himself. The record in this case is replete with the questioning concerning this request and following an extensive hearing, the trial court concluded appellant was sufficiently intelligent, educated and mentally aware to have made his request voluntarily and with full knowledge and understanding of his actions. The court ordered attorney Kuhlman to be present at trial and to assist appellant should appellant make a request for assistance.

Appellant then filed a series of motions as follows:

(1) Request for use of telephone

(2) Request for use of law library at pre-scribed hours 3–4 days per week.

(3) Copies of transcripts of co-defendants trials.

On March 25, 1977, a substitute informa-tion for the indictment was filed, charging appellant with first degree murder. Appel-lant filed a motion for a Bill of Particulars, which was sustained and an answer thereto was filed by the state. On April 4, 1977, the trial commenced with appellant acting as his own defense counsel, assisted by at-torney Kuhlman.

The evidence of record is summarized as follows:

On March 10, 1976, between 10:00 a. m. and 10:30 a. m., three armed and masked men entered the North Hills Bank in Clay County. Two employees, two customers and the security guard were in the bank. Almost simultaneously with the robbers' en-try into the bank, gunshots were exchanged between the would-be robbers and the se-curity guard. The guard suffered multiple and fatal wounds. The robbers fled the scene, taking no money with them. Upon their flight, two of them were observed by a passing motorist. This motorist followed the get-away car and secured the license number. The get-away car, a 1973 gold Ford LTD, was found abandoned later and was determined to have been stolen.

One of the robbers fled on foot and was observed by another witness. This witness observed this robber removing his coveralls. The witness later identified this robber upon a separate trial as one Robert Denson.

The evidence further established that on March 10, 1976, one Mary Morris had grant-ed permission to one James Faulkner to use her apartment in Jackson County, Missouri for a meeting. This meeting commenced at 8:30 a. m. and appellant was present along with Cardis Berry, James Faulkner, Steven Williams, Robert Denson and Jerome Hand-ley. Upon arrival, all were dressed in street clothes, but upon departure, Handley, Williams and Denson wore striped jump-suits.

At approximately noon on March 10, 1976, appellant and James Faulkner re-turned to the Morris apartment to listen to the news. Shortly after their arrival, they were joined by Handley and Williams.

Appellant and Faulkner inquired as to where the money was and were advised by Handley and Williams that there was no money and that there had been trouble with the security guard. Morris testified that appellant became angry upon learning of the results. Approximately 10 minutes la-ter, Berry arrived at the apartment by cab, but Morris did not admit him to the apart-ment.

James Faulkner, turning state's evidence in exchange for a 15 year sentence, testified that in January of 1976, he commenced plans for the robbery of the bank. He further testified that in mid January, he discussed the matter with appellant and appellant agreed to rob the bank. He fur-ther testified that he, appellant and others drove to Clay County to "scope" the bank for purposes of furthering the robbery plans. Faulkner further testified appellant solicited Steven Williams for the latter's role in the robbery. The plan called for Handley, Williams and Denson to rob the bank.

A gold LTD and a blue and black Buick were stolen for use in the robbery scheme. At 8:00 a. m. on the morning of the rob-bery, Faulkner, appellant and the others met at Faulkner's apartment. At this meeting, the weapons "were wiped down" for purposes of removing fingerprints. Three striped jumpsuits and ski masks were furnished Handley, Williams and Denson.

Faulkner, appellant and Berry were driv-en to the Morris apartment by one Loren Brown. Brown had been persuaded to drive the trio to the Morris apartment by Faulkner. En route to North Kansas City in Clay County, appellant left the others to make an appearance at a place called Coach's Council at 18th and Paseo, Kansas City, Jackson County, Missouri. Appellant was required to appear at the Coach's Coun-cil at the direction of appellant's parole officer.

The plan included appellant being picked up by Faulkner at 18th and Paseo. Faulkner, upon his return from Clay County, picked up appellant. Appellant and Faulkner returned to the Morris apartment to await the return of the others.

Appellant was arrested in Jackson County, Missouri on March 15, 1976. When taken into custody, appellant was hiding under a chest of drawers. Appellant had in his possession two bus tickets. One ticket was good for a trip from Kansas City to St. Louis; the second, from St. Louis to Washington, D.C.

Appellant did not testify upon trial, but called two witnesses in his behalf. The first witness was Steven Williams. This witness admitted his participation in the crime, but denied seeing the appellant upon the day the crime was committed. This witness, upon his own trial concluded previously, testified, however, appellant was involved, but explained his change of story because Faulkner had told him to testify against appellant in his own trial.

The second witness, Jerome Handley, admitted his role in the robbery, but testified appellant was not involved or present at its planning. At the close of the evidence, the jury found appellant guilty and assessed his punishment.

Fifteen alleged errors are presented by appellant's counsel and by appellant's pro se brief.[1]

### I—(Counsel)

"The trial court erred in failing to inquire into defendant's request for change of venue and in trying the defendant in Clay County, Missouri."

### I—(Pro se)

"The trial court was without jurisdiction to try appellant as the evidence failed to establish that appellant commited [sic] any offence [sic] in Clay County."

█ Point one is ruled against appellant. Allegations that the court should have inquired into appellant's request for change

---

1. For purposes of clarity, each point is taken up as expressed first in counsel's brief and then

of venue is not supported by the evidence. The record shows appellant was furnished case law and procedural instructions by attorney Kuhlman; appellant did nothing relative to a formal motion for change of venue.

Rule 30.04 requires an application for a change of venue shall be made, setting forth the facts or grounds upon which such change is sought.

Appellant cannot be heard to complain on this point for three reasons. First, counsel had advised him as to what was needed. Appellant rejected this advice. Secondly, appellant had, pursuant to the first indictment, successfully filed and was granted a change of venue, and was to that extent, familiar with the necessity to make a formal request for a change of venue. Finally, appellant refused to permit such a motion to be filed. Mere general allegations of prejudice without facts supporting the allegations do not suffice. See *State v. Denmon*, 473 S.W.2d 741 (Mo.1971), *State v. Euge*, 349 S.W.2d 502 (Mo.App.1961).

█ There is nothing in the record on this case to even suggest that the procedure or the jurors selected were prejudiced against appellant. The failure or refusal of the court on its own motion to order a change of venue was not an abuse of discretion.

As to the matter raised in appellant's brief (Pro se I), it is likewise without merit.

It is true our state constitution, Article I, § 18(a), insures to an accused the right to a speedy trial by an impartial jury of the county. This has been interpreted to mean a speedy trial by an impartial jury of the county wherein the crime was committed. This constitutional guarantee is further supported by statute, see § 541.033, RSMo 1969, which provides:

"Persons accused of committing offenses against the laws of this state, except as may be otherwise provided by law, shall be prosecuted:

1. In the county in which the offense is committed . . ."

---

as expressed in the pro se brief, followed by the court's disposition of both.

In resolving this point, specific statutory language and the evidence of record as it interrelates to the statutes, must be considered conjunctively.

Appellant argues he was an alleged aider and abettor, thus concluding he was at best an accessory before the fact, and thus under Article I, § 18(a) of the Constitution of Missouri and § 541.033, RSMo (1969), venue for his trial was in Jackson County, Missouri, not Clay County, Missouri.

§ 541.110, RSMo 1969 provides:

"An indictment against an accessory to any felony may be found in any county where the offense of such accessory shall have been committed, notwithstanding the principal offense may have been committed in another county; and the like proceedings shall be had therein, in all respects, as if the principal offense had been committed in the same county."

If this particular statute was the only factor to consider, the court would be required to recognize the validity of appellant's conclusion. However, the evidence herein established appellant accompanied James Faulkner, Jerome Donnell and Steven Williams to the area of the bank in Clay County. This trip, according to witness Faulkner, had a twofold purpose. The first was to observe the bank or "scope it" by use of binoculars. Secondly, the trip included Steven Williams for the express purpose of allowing Williams to decide whether Williams wanted to participate in the robbery. It should be recalled that Faulkner testified appellant solicited Williams to participate in the robbery.

Other testimony, although contradicted, placed appellant in Clay County on the morning of the robbery. Witness Loren Brown testified appellant accompanied James Faulkner and Cardis Berry to Clay County. This point was contradicted by Faulkner, who testified on the morning of the robbery appellant was let out of the car in Jackson County at 18th and Paseo.

An additional factor must be considered on this point. § 556.170, RSMo 1969 applies to the case at hand and reads as follows:

"Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree."

This statute has been interpreted to mean that, "Under the statute all persons who participate in a crime may be charged, tried, convicted, and punished alike." *State v. Cline,* 452 S.W.2d 190, 194 (Mo.1970). Also see *State v. West,* 484 S.W.2d 191 (Mo.1972); *State v. Johnson,* 510 S.W.2d 485 (Mo.App.1974).

While our courts have spoken to the status of accessory versus principal and have concluded those accused shall be tried in like manner, no direct decision has been made on the precise question of venue. This question, being deserving of an answer as it is squarely presented herein, deserves a review of how other jurisdictions have addressed the question.

As to how other jurisdictions with similar statutory or case provisions have reasoned upon the issue, see *U. S. v. Buckhanon,* 505 F.2d 1079, 1083 (8th Cir. 1974) Minn.; *State v. Reeves,* 246 Ark. 1187, 442 S.W.2d 229 (1969); *People v. King,* 30 Cal.App.2d 185, 85 P.2d 928 (1938); *Gee v. State,* 110 Ga. App. 439, 138 S.E.2d 700 (1964); *Workman v. State,* 216 Ind. 68, 23 N.E.2d 419 (1939); *People v. Doe,* 264 Mich. 475, 250 N.W. 270 (1933); *Watson v. State,* 166 Miss. 194, 146 So. 122 (1933); *Baker v. State,* 124 Tex.Cr. App. 300, 62 S.W.2d 132 (1933).

■ In interpreting the foregoing cases and by adopting the reasoning set forth in these cases, it is expressly declared herein that in those cases wherein an individual or individuals and their acts complained of, shall fall within § 556.170, RSMo 1969, venue shall be proper in the county wherein the accessorial act or the principal act occurred without regard to any distinction between an accessorial or principal act or acts.

For further consideration of this question, see § 541.033(2), RSMo 1969, which, for purposes of prosecution, provides:

"Persons accused of committing offenses against the laws of this state, except as may be otherwise provided by law, shall be prosecuted: . . .
2. If the offense is committed partly in one county and partly in another, or if the elements of the crime occur in more than one county, then in any of the counties where any element of the offense occurred."

Once again, the application of this statute has not been made to the question of venue by our courts. However, see *Commonwealth v. Parker,* 108 Ky. 673, 57 S.W. 484 (1900) and *Watson v. State, supra.*

■ As it relates to the precise question of venue, § 541.033(2), RSMo 1969 is interpreted herein to mean that proper venue shall lie for the trial of an accused whose act or acts bring him within this statute in any county in which any one or all the elements of the offense has occurred.

■ Before final disposition of this question, it should be pointed out also that the challenge as to venue is a matter which can be waived by an accused for his failure to object or to timely raise the question. The record herein as has been pointed out, reflects appellant, although advised by counsel and having experienced a previous award of a change of venue under prior indictment, in fact did waive any claim for a change of venue. See *State v. Lynn,* 169 Mo. 664, 70 S.W. 127 (1902); *State v. Speedy,* 543 S.W.2d 251 (Mo.App.1976).

## II—(Counsel)

"The trial court erred in refusing to appoint an attorney who could provide effective assistance of counsel."

## III—(Pro se)

"The court erred in denying appellant effective assistance of counsel in the conduct of his defense." [2]

This point raised by both counsel and appellant via his pro se brief could be summarily disposed of for the failure to comply with Rule 84.04(d) and made applicable to criminal cases by Rule 28.18. In *State v. Robinson,* 551 S.W.2d 309 (Mo.App.1977) such failure was held not to have preserved an issue for appeal.

While adherence to Rules 84.04(d) and 28.18 has not been strictly complied with, review of the argument and transcript enables the court to consider the matter.

It should be pointed out that usually such question is presented to the court under a motion pursuant to Rule 27.26. In fact, the state Supreme Court has refused to review this particular issue on direct appeal. See *State v. Blackwell,* 459 S.W.2d 268 (Mo. banc 1970); *State v. Smith,* 454 S.W.2d 539 (Mo.1970); *State v. Cluck,* 451 S.W.2d 103 (Mo.1970).

However, the record herein contains sufficient evidence to provide a meaningful review and by virtue of appellant's incessant contention of prejudice, the question is taken up for disposition.

At the outset, declaration of the standard applicable to determination of the issue must be stated. In the most recent decision prescribing the standard, *Seales v. State,* 580 S.W.2d 733 (Mo. banc 1979), our State Supreme Court has held that standard to be:

" 'The accepted standard for effectiveness of trial counsel is now established as that degree of performance which conforms to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances. *United States v. Easter,* 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). Furthermore, there is a presumption that counsel is competent, *Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976), and the petitioner must shoulder a

---

2. These points, while not numerically identical, are taken up together as they address the same issue.

heavy burden to override this presumption. *Id.; Crismon v. United States,* 510 F.2d 356, 358 (8th Cir. 1975); *McQueen v. Swenson* (McQueen I), 498 F.2d 207, 214 (8th Cir. 1974). Finally, the exercise of reasonable judgment, even when hindsight reveals a mistake in that judgment, does not render a lawyer negligent or lacking in competence in rendering his services.' "

■ While appellant's contention goes beyond the question of effective assistance of counsel, it should be pointed out that all of the attorneys herein were prevented from assisting appellant because of his continued general allegation of prejudice and mistrust of the attorneys. The record is quite clear that appellant consistently refused assistance from the attorneys assigned to help him. Such action by appellant led to his filing his motion, and after an extensive hearing by the court, the court granted said motion, allowing appellant to defend himself.

The record reveals the court appointed counsel on four different occasions. The record also shows that after appellant refused counsel, an extensive hearing was held and it was found appellant was possessed of sufficient intelligence, awareness and education to render his decision to act as his own defense counsel, a voluntary act. Such actions amounted to a waiver within *State v. Gaye,* 532 S.W.2d 783 (Mo.App. 1975).

The record also reveals the court instructed attorney, P. Wayne Kuhlman, to be available at trial and to assist appellant during the course thereof. In fact, the record reveals attorney Kuhlman presented part of the closing argument to the jury on behalf of the appellant.

Point II (counsel's brief) and III (Pro se brief) are ruled against appellant for the foregoing reasons. Further, the general allegations of prejudice, followed by appellant's demand to represent himself, nullify any claim of failure by the trial court to appoint effective counsel.

The demand by appellant that he be appointed counsel outside of Clay County was supported by nothing more than general allegations of racial prejudice. The trial court made repeated attempts to establish the facts upon which appellant's allegations rested, but appellant, although provided the repeated opportunity, simply failed to produce evidence to support the allegation.

■ Since appellant's contention goes to the action of the trial court, the question of whether appellant was entitled, upon mere demand, to counsel outside of Clay County, must be addressed. The selection of counsel for an indigent accused is within the discretion of the trial court. *State v. Hamblin,* 448 S.W.2d 603 (Mo.1970); *State v. Riley,* 394 S.W.2d 360 (Mo.1965).

■ While an indigent accused is entitled to appointment of counsel, that right does not create the conclusion that such accused is entitled to any particular attorney, *State v. Jefferies,* 504 S.W.2d 6 (Mo.1974); *State v. Williams,* 419 S.W.2d 49 (Mo.1967); *State v. Haddix,* 566 S.W.2d 266 (Mo.App.1978); *State v. Sweazea,* 555 S.W.2d 670 (Mo.App. 1977). Insofar as *State v. Hamblin, State v. Riley, State v. Jefferies, State v. Williams, State v. Haddix* and *State v. Sweazea, supra,* apply herein they are construed to mean that no trial court is required to appoint an attorney outside the particular county of venue without sufficient evidence which establishes the necessity therefor.

Whether any reference is made to the standard prescribed by *Seales v. State, supra,* or not, the evidence clearly establishes appellant was afforded every opportunity to be properly represented by competent counsel. There was no error by the trial court.

### III—(Counsel)

"The trial court erred in refusing to provide defendant a transcript of prior proceedings."

This issue, as raised, violates Rule 84.-04(d) and is made applicable herein by Rule 28.18. Without additional reference to justify review of this matter because of the arguments and the record, it is sufficient in disposing of this issue to point out that

appellant had filed motions for transcripts of trial proceedings of other defendants. This point is raised erroneously in fact and under a misunderstanding of the law.

■ The record reveals that appellant made demand for the transcripts of the testimony of James Faulkner and Loren Brown, witnesses in the separate trials of defendants, Williams and Handley. The record also reveals that the transcript of the Williams trial was provided appellant and that the proceedings in the trial of Handley had not been transcribed at the time of appellant's demand; but from appellant's own admission on his motion for new trial, he had, in fact access to the transcript of the Handley trial as well.

*Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) and *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) relied upon by appellant, are distinguishable from the case herein. *Griffin v. Illinois, supra,* merely directs that an indigent prisoner must be provided the same basic tools to prepare his defense when those tools are available to other prisoners for a price. In the case herein, the transcript had not been made at the time of demand and was available to nobody, including the state.

*Britt v. North Carolina, supra,* dealt with the right of an accused to a copy of a transcript of a previous trial of the same accused, which ended in a mistrial. In this case, the court, while concluding that refusal to such a transcript was not error, also established criteria to be followed in making a valid decision upon such a request. These were (a) the value of the transcript to the defendant in connection with the trial for which it is sought, and (b) the availability of alternative devices which would fulfill the same functions as a transcript. In *Britt v. North Carolina, supra,* the court concluded there were available alternatives.[3]

Some courts have justified an outright refusal to require that the state furnish an accused a copy of the transcript of a co-defendant's trial. See *Elliott v. Morford,* 557 F.2d 1228 (6th Cir. 1977), cert. denied 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); *State v. Coe,* 223 Kan. 153, 574 P.2d 929 (1977); *State v. Cox,* 101 N.J.Super. 470, 244 A.2d 693 (1968), cert. denied 53 N.J. 510, 251 A.2d 449 (1969); *State v. Elliott,* 524 S.W.2d 473 (Tenn.1975). One jurisdiction, it is found, rejects the majority view and requires the providing of such transcript. See *State v. Campbell,* 215 N.W.2d 227 (Iowa 1974).

In the case of *U. S. v. Bamberger,* 482 F.2d 166 (9th Cir. 1973), cert. denied 414 U.S. 1041, 94 S.Ct. 543, 38 L.Ed.2d 332 (1973), the court held it was harmless error to refuse a defendant a copy of the transcript of his second trial where he had, in fact, a transcript of his first trial. As in the case herein, the accused in *U. S. v. Bamberger, supra,* desired to use such transcript for impeachment. The appellant herein had a copy of the transcript of the Williams trial and access to the transcript in the Handley trial. There was no plain error in refusal to provide appellant herein with a copy of the transcript of the Handley trial.

For the reasons set forth above, this issue is ruled against appellant.

At this juncture, points IV and VI of counsel's brief and point II of appellant's pro se brief are taken up together as they interrelate to the same issue.

The points raised are as follows:

IV—(Counsel)

"The trial court erred in allowing state's substitute information."

VI—(Counsel)

"The indictment and substitute information failed to charge defendant with first degree murder."

II—(Pro se)

"The substitute information was fatally defective as it failed to specifically charge an offense to which appellant could defend

---

3. Alternative in this case, due to circumstances of trial location and court personnel, was the availability of court reporter notes from first trial.

against, and it fails to bar a subsequent prosecution for the same alleged acts."

■ Rule 24.02 permits the substitution of an information any time before verdict. This right accorded the state is not absolute, however, and must provide (1) no additional or different offense is charged and (2) no substantial rights of the defendant are prejudiced.

■ Upon the question of prejudice, "The test of prejudice is whether a defense under the charge as originally made would be equally available after the amendment and whether defendant's evidence would be equally applicable after as well as before the amendment." *State v. Taylor,* 375 S.W.2d 58, 63 (Mo.1964). See also *State v. Wilson,* 544 S.W.2d 859, 862 (Mo.App.1976). A careful review of the record, however, established appellant's defense was equally available after the filing of the substitute information as it was prior to the filing of same.

Further, on this issue, appellant contends the substitute information was vague and did not adequately charge the appellant with the offense. This point was never raised in appellant's motion for new trial, but Rule 28.02 requires this court to review the information for sufficiency. See *State v. Meiers,* 412 S.W.2d 478 (Mo.1967) and *State v. Williams,* 546 S.W.2d 533 (Mo.App. 1977).

Rule 24.01(a) prescribes the criteria for determining the sufficiency of an information. That rule includes: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." See *State v. Phelps,* 478 S.W.2d 304 (Mo. 1972); *State v. Simone,* 416 S.W.2d 96 (Mo. 1967).

■ Careful study of the indictment and the substitute information leads to the conclusion that the charges against appellant were sufficiently and definitely described to enable appellant to defend himself and were of sufficient clarity to fall within the rules required in *State v. Simone, supra; State v. Tandy,* 401 S.W.2d 409 (Mo.1966) and *State v. Barlett,* 394 S.W.2d 434 (Mo.App.1965).

An added factor in the case herein which dispels appellant's position on this issue is that appellant filed a Bill of Particulars to which the state filed its answer.

For the foregoing, points IV and VI raised by counsel and point II raised pro se are ruled against appellant.

■ Point V raised by counsel only states that "[t]he trial court erred in refusing defendant access to a law library and use of telephone." Appellant filed his motion for use of a law library for four hours per day, three days per week.

While the court overruled appellant's motion, the court ordered appellant should have the privilege of using the bar library the same as members of the public and the Bar would be entitled, but appellant's confinement, of course, made such unrestricted use impossible. A hearing was held wherein the Clay County Jail Administrator testified to the security problems involved in appellant's request.

At this point, appellant was again reminded by the court of the advisability of accepting appointed counsel, but appellant refused the court's suggestion. While this point was not properly preserved for appeal under Rule 84.04(d) and applicable herein under Rule 28.18, there is sufficient evidence of record and argument raised to review the issue.

In his brief, appellant cites *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), which without doubt is the leading case on an indigent accused's right of access to the courts by requiring prison authorities to assist inmates in the preparation of proper legal papers and by providing prisoners with adequate law libraries. The court in *Bounds v. Smith, supra,* 97 S.Ct. at 1499, also pointed out ". . . that while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here . . . does not foreclose alternative means to achieve that goal."

In the case of *U. S. v. West,* 557 F.2d 151 (8th Cir. 1977), an alternative means of providing adequate access to the courts for prisoners was determined. In *U. S. v. West, supra,* as in the case herein, the accused elected to represent himself and refused assistance from available counsel. The court, on appeal, denied the defendant's contention that he was denied adequate opportunity to prepare his defense and that the rule in *Bounds v. Smith, supra,* was satisfied by the accused having available adequate assistance from persons trained in the law. For further application of the alternative question, see *Boston v. Stanton,* 450 F.Supp. 1049 (W.D.Mo.1978).

The appellant herein at all times had the readily available assistance of persons trained in the law to assist him.

■ On the allegation that appellant was denied the use of the telephone, appellant fails to indicate to this court how that denial resulted in any manifest injustice or plain error. In fact, the record shows counsel was available and willing to interview witnesses on appellant's behalf.

The court committed no error and for the foregoing reasons, point V is ruled against appellant.

The next point raised by appellant joins point VII of Counsel's brief with point VI of appellant's pro se brief and they read as follows:

VII—(Counsel)

"The trial court erred in its instruction's [sic] to the jury."

VI—(Pro se)

"It was error for the court to give instructions Number 5 and 6 as they were misleading, improper and unsupported by the evidence or the charge."

Neither point VII raised by counsel, not point VI raised by appellant's pro se brief, technically preserved anything for this court to review. As to point VII, appellant makes a mere general allegation of error and provides no reasons as to why the instructions were erroneous. See *State v. Hickman,* 411 S.W.2d 195 (Mo.1967) and *State v. Pope,* 364 S.W.2d 564 (Mo.1963).

As to point VI of appellant's pro se brief, no specific objection was made concerning instructions upon trial or in appellant's motion for new trial. See *State v. Rennert,* 514 S.W.2d 579 (Mo.1974); *State v. Young,* 534 S.W.2d 585 (Mo.App.1976); Rule 20.03.

■ Any alleged error upon failure to comply with Rule 20.03 must be reviewed under Rule 27.20(c), the plain error rule. Review under that rule has been properly limited to those cases wherein the record establishes the trial court has misdirected or failed to instruct the jury on the law of the case so as to cause manifest injustice. See *State v. Auger,* 434 S.W.2d 1 (Mo.1968) and *State v. Johnson,* 559 S.W.2d 756 (Mo.App. 1977).

■ The instructions complained of herein sufficiently conform to MAI–CR 2.10 and MAI–CR 2.14. In addition, appellant contends there were several variances between the charge of the substitute information and the instructions. Appellant contends the information charges appellant "aided, abetted and encouraged" while a reading of the instructions used the terms of "aided and encouraged."

Appellant's contention amounts to nothing more than a fanciful play on words as the interchange of the terms employed between the information and the instructions carry no material variance either expressly or inferentially, which could be construed to have been prejudicial to the appellant, thus resulting in plain error. See *State v. Crossman,* 464 S.W.2d 36 (Mo.1971); *State v. Collins,* 519 S.W.2d 362 (Mo.App.1975); *State v. Kirk,* 510 S.W.2d 196 (Mo.App. 1974).

For the foregoing reasons, point VII raised by counsel and point VI raised by appellant's pro se are ruled against appellant.

Point V raised pro se by appellant states:

V—(Pro se)

"Prosecution knowingly used prejured [sic] testimony and suppressed material facts, which resulted in the wrongful conviction of appellant."

■ Appellant's contention here rests solely upon the inconsistent statements

made by witnesses Loren Brown and James Faulkner at trial and statements made by each at a prior time. Such inconsistent statements do not amount to perjury. In the case of *State v. Vidauri,* 305·S.W.2d 437, 440 (Mo.1957), the court declared, ". . . the very essence of the crime of perjury is wilful false swearing to a substantially definite material fact."

Not only does appellant fail to establish wherein such inconsistent statements were the wilful false swearing of a material fact, but his attack on this issue goes much further and this requires appellant to establish the alleged perjured testimony was deliberately falsified, known by the prosecutor to be false and that the conviction was obtained as a result of such perjured testimony. See *State v. Flauaus,* 515 S.W.2d 873 (Mo.App.1974) and *State v. Nolan,* 499 S.W.2d 240 (Mo.App.1973).

Neither appellant's argument nor the evidence of the record supports appellant and for the foregoing decisions, point V raised pro se is ruled against appellant.

Point VII raised pro se reads:

VII—(Pro se)

"The court erred in allowing the prosecution to interject statements in the closing arguments to the jury that were designed to prejudice and inflame jurors against appellant."

No objection as to the closing argument of the prosecution was made by appellant. There technically was nothing preserved for review by this court, however, the point is entertained from the record and the argument.

The portion of the argument which appellant attempts to attack on appeal relates to the plea by the prosecution for law enforcement and the jury to do its duty.

■ The prosecution has a right to call attention to the prevalence of crime, to urge a jury to do its duty and uphold the law. Also, inferences from conditions for failure to uphold the law may be drawn. See *State v. Pruitt,* 479 S.W.2d 785 (Mo. banc 1972); *State v. Lang,* 515 S.W.2d 507 (Mo.1974); *State v. Rodriguez,* 484 S.W.2d 203 (Mo.1972); *State v. Crawford,* 478 S.W.2d 314 (Mo.1972), appeal dismissed 409 U.S. 811, 93 S.Ct. 176, 34 L.Ed.2d 66 (1972); *State v. Elbert,* 438 S.W.2d 164 (Mo.1969); *State v. Steward,* 564 S.W.2d 95 (Mo.App. 1978).

■ There is requirement upon the court that absent an objection by an accused when the argument is "so glaringly offensive and prejudicial" the court should intervene and put a stop to the argument, see *State v. Goodwin,* 352 S.W.2d 614 (Mo. banc 1962).

■ The record fails to reflect any glaringly offensive and prejudicial remarks by the prosecution upon the portion of the argument attacked by appellant on this appeal.

The record also fails to support appellant's contention that the closing argument herein falls within the category of cases holding that an argument was designed and directed toward arousing the personal hostility of the jurors toward the accused. See *State v. Groves,* 295 S.W.2d 169 (Mo.1956); *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524 (Mo. banc 1947); *State v. Ellinger,* 549 S.W.2d 136 (Mo.App.1977); *State v. Heinrich,* 492 S.W.2d 109 (Mo.App.1973).

Nothing of record shows the closing argument of the prosecution to have placed in the minds of the jurors that an acquittal of the appellant would place them or their families in danger. The argument did not speculate on any future criminal activity of appellant. In essence, the argument was a general plea for upholding the law.

There was nothing apparent or inferential in the argument which was inclusive of glaring offense or prejudice toward appellant. For the foregoing reasons, point VII pro se is ruled against appellant.

Appellant further raises pro se point IV, which reads:

IV—(Pro se)

"The verdict of guilty is unsupported by substantial or sufficient evidence."

■ Resolution of this point by appellant requires reiteration of the rules applicable upon review of a verdict by jury. In determination of the sufficiency of the evidence, ". . . the facts in evidence and

all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded." *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

After the application of the rule in *State v. Franco, supra,* the court is left to determine whether there is substantial evidence from which reasonable persons could have found an accused guilty as charged. *State v. Longmeyer,* 566 S.W.2d 496 (Mo.App. 1978).

Appellant herein participated in the crime as an aider and abettor. The court has defined those terms as follows:

"Aiding or abetting, in the sense that those words are used in criminal law, contemplate conduct calculated to incite, encourage or assist in the perpetration of a crime. These words comprehend all assistance rendered by acts or words of encouragement, incitement or support in the criminal act and involve some participation, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature." *State v. Muchnick,* 334 S.W.2d 386, 388 (Mo.App.1960).

■ Evidence which fairly shows any form of affirmative participation that an accused in any way aided, abetted or encouraged another in the commission of a crime is sufficient to support conviction. See *State v. Stockdale,* 415 S.W.2d 769 (Mo. 1967); *State v. Ramsey,* 368 S.W.2d 413 (Mo.1963).

■ An accused's participation in the offense may be inferred by his conduct before, during or after the commission of the offense, see *State v. Corbin,* 186 S.W.2d 469 (Mo.1945); *State v. Jackson,* 519 S.W.2d 551 (Mo.App.1975). Conviction will stand upon evidence, proving participation in the planning of the crime, see *State v. Slade,* 338 S.W.2d 802 (Mo.1960), *State v. Hayes,* 262 S.W. 1034 (Mo.1924); *State v. Evans,* 545 S.W.2d 694 (Mo.App.1976); that it need not be proven defendant was physically present when the offense was committed, see *State*

*v. Siekermann,* 367 S.W.2d 643 (Mo.1963) and *State v. Slade, supra;* nor that the accused did all the acts which make up the elements of the crime, see *State v. Evans, supra,* and *State v. Lemon,* 504 S.W.2d 676 (Mo.App.1973), and that the uncorroborated evidence of an accomplice will sustain a conviction unless such testimony lacks probative value as not to amount to substantial evidence, see *State v. Evans, supra,* and *State v. Powell,* 433 S.W.2d 33 (Mo.1968).

■ Following the principles announced in the foregoing cases and in applying such principles to the evidence in this case, the conclusion is inescapable that there was substantial evidence to support the jury's guilty verdict.

The testimony of witness Faulkner established appellant agreed several weeks before the actual crime to join Faulkner and others in the perpetration of the actual robbery. Witness Faulkner further testified appellant participated in the planning sessions at Faulkner's apartment and at the apartment residence of Mary Morris. Faulkner's testimony established appellant accompanied Faulkner and others to the bank location in Clay County to view and "scope" the bank. Testimony by this same witness included repeated statements that appellant was in agreement to rob the bank.

Both witness Faulkner and Mary Morris testified appellant was present at the Morris residence, both before and after the commission of the offense and witness Morris testified appellant made inquiry of other participants as to where the money was from the robbery.

While witness Loren Brown's testimony was inconsistent with the testimony of witness Faulkner as to appellant being in Clay County on the day of the commission of the offense, Brown's testimony did corroborate the testimony of both Morris and Faulkner that appellant was at the Morris residence the morning of the day the offense was committed and that appellant in fact accompanied Faulkner to the Morris residence.

There was substantial evidence that the jury could have found appellant aided and

abetted the commission of the robbery and for the foregoing reasons, point IV is ruled against appellant.

The final point raised is by way of point VIII by counsel, which reads:

VIII—(Counsel)

"The trial court erred in failing to grant defendant a new trial."

Counsel, on this point, presents no authorities. In addition, counsel adopts by reference points within appellant's pro se brief.

Point VIII by counsel is ruled against appellant not only for failure to comply with Rule 84.04(d) and made applicable herein by Rule 28.28, but because determination of the various points adopted by reference thereunder have been addressed and disposed of within the preceding portions of this opinion.

Finding no error, the verdict within the trial court is for all purposes herein affirmed.

All concur.